**CLEMTEX, INC., Plaintiff-Appellant,**

v.

**SOUTHEASTERN FIDELITY INSURANCE COMPANY, et al., Defendants-Appellees.**

No. 86–2329.

United States Court of Appeals, Fifth Circuit.

Jan. 21, 1987.

Douglas E. Markham, Pearson Grimes, Jr., Houston, Tex., for plaintiff-appellant.

Wilton P. Chalker, Houston, Tex., for defendants-appellees.

Before RUBIN, JOHNSON, and JONES, Circuit Judges.

JOHNSON, Circuit Judge:

Plaintiff Clemtex, Inc., brought this action for a judgment declaring its rights under the deductible provisions of insurance policies issued by defendants Southeastern Fidelity Insurance Company ("Southeastern"), Foremost Insurance Company ("Foremost"), and Great Atlantic Insurance Company ("Great Atlantic"). The district court concluded that the insurance contracts were not ambiguous and adopted defendants' interpretation of the contracts. In our judgment there is ambiguity; we therefore reverse and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Clemtex, Inc., distributes sandblasting equipment and related products. Since 1975, nearly 150 lawsuits have been brought against Clemtex seeking damages for silicosis allegedly developed through exposure to Clemtex's products. Apparently,[1] Clemtex has had general liability insurance coverage approximately since its formation in 1956 until 1985, when it was unable to find an insurer willing to provide liability insurance with products liability coverage. Throughout these years, Clemtex has had many different general liability insurance policies furnished by different insurers. Under these circumstances, Clemtex and its insurers have found it necessary to reach some accomodation concerning which insurers must indemnify Clemtex for the liability arising from the silicosis claims and for how much indemnification each insurer is responsible. In making these determinations, Clemtex and its insurers have apparently been applying the exposure theory of insurance coverage triggerage and the rule of liability apportionment enunciated in *Insurance Company of North America v. Forty-Eight Insulations, Inc.,* 633 F.2d 1212 (6th Cir.1980),[2] both discussed more fully in this opinion.

---

1. The record merely adumbrates many of the facts forming the background of this case. Although these background circumstances are not altogether necessary to our decision herein, they are set forth in an effort to make the opinion more readily understandable.

2. *Reh'g granted in part on other grounds,* 657 F.2d 814 (6th Cir.), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981).

Four of Clemtex's general liability insurance policies have had deductible provisions. These four policies were successive; each was in effect during a different one-year period in the years 1975 to 1979. Each policy was supplied by a different insurer. Three of the four insurers insist that each insurer is entitled to apply the full deductible amount against its apportioned share of indemnification liability. Clemtex resists this practice and asserts that the rule of apportionment applicable to indemnification liability should be applied to the deductible amounts as well.. One of the four insurers agrees with Clemtex. Clemtex brought this action against the remaining three insurers, defendants-appellees herein, for a declaration of its rights. Clemtex moved for partial summary judgment. The three defendant insurers filed a joint cross-motion for summary judgment.

The district court granted defendants' motion for summary judgment and entered a judgment declaring "that the deductible provisions of the insurance policies between Plaintiff and Defendants require that Plaintiff pay the full amount of the deductible that it is obligated to pay under each policy for each silicosis claim, regardless of any pro rata apportionment of the damages or defense costs incurred in connection with that claim." The court ordered Clemtex to "pay Defendants the full amount of all deductibles due and owing to Defendants in light of [its] opinion and the pertinent insurance policy provisions" and then dismissed the action. Clemtex appeals.

## II. DISCUSSION

We begin by recapitulating the exposure theory and the rule of apportionment enunciated by the Sixth Circuit in the *Forty-Eight* case. In that case, numerous actions had been brought against a manufacturer of asbestos products generally asserting that workers had developed asbestosis and other diseases as a result of exposure over many years to asbestos particles from the manufacturer's products. Like Clemtex in the present case, the manufacturer had had different general liability insurance policies from different insurers. The *Forty-Eight* court addressed, among others, this question: "[A]ssuming the manufacturer is found liable, which of the insurance companies must cover the judgment" against the manufacturer in an underlying asbestos action. *Forty-Eight Insulations, Inc.,* 633 F.2d at 1214.

The *Forty-Eight* court had before it insurance policies providing:

[The insurer] will pay on behalf of the insured all sums which the insured shall be legally obligated to pay as damages because of ... bodily injury or ... property damage to which this policy applies caused by an occurrence.

"Bodily injury" means *bodily injury,* sickness or disease sustained by any person *which occurs during the policy period,* including death at any time resulting therefrom.

"Occurrence" means an accident, including injurious exposure to conditions which results, during the policy period, in bodily injury....

*Id.* at 1216 (alteration and ellipses in original; footnote omitted; emphasis supplied). Under these provisions, coverage was triggered by "bodily injury ... which occurs during the policy period." Thus, the interpretation of the term *bodily injury* was central to the case. *Id.* at 1216 n. 7. Invoking Illinois and New Jersey law, the court adopted the so-called exposure theory of triggerage. It concluded that the term *bodily injury* "should be construed to include the tissue damage which takes place upon initial inhalation of asbestos," *id.* at 1223, and all tissue damage incurred through subsequent exposure to asbestos, *id.* at 1226 & n. 28. It was possible for the bodily injury, so construed, in an underlying asbestos action to span the policy periods of multiple insurance contracts. Thus, there was the further question to what extent each triggered policy would have to indemnify the manufacturer for its liability under the judgment in the underlying asbestos action. The district court in *Forty-Eight* had "prorated liability among all the

insurance companies which were on the risk while the injured victim was breathing in asbestos." *Id.* at 1224. The court of appeals upheld this rule of apportionment:

> Each insurer is liable for its pro rata share. The insurer's liability is not "joint and several", it is individual and proportionate. Accordingly, where an insurer can show that no exposure to asbestos manufactured by its insured took place during certain years, then that insurer cannot be liable for those years.

*Id.* at 1225.

In *Porter v. American Optical Corp.*, 641 F.2d 1128, 1142 (5th Cir.), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981), this Court addressed the question "whether insurance liability for injury from a cumulative, progressive disease, such as asbestosis, should be apportioned among various insurers on a pro rata basis according to an 'injurious exposure' approach." In "the absence of a showing to the contrary," the Court assumed that the insurance contracts before it had been "made in Louisiana or in a state where the law would be the same as that of Louisiana." *Id.* at 1145. Without further reference to Louisiana law, the Court noted its agreement with the "reasoning and result"[3] of

the *Forty-Eight* opinion and "accept[ed] the 'injurious exposure' theory and the logically consequent rule of proration of liability for insurance carriers who were on the coverage while the injured party was exposed to the asbestos hazards which resulted in illness and death." *Id.*[4]

In the present case, the district court determined that Texas law controls the interpretation of the insurance policies at issue. The parties do not contest this determination and in fact themselves rely upon Texas law. Consequently, we do not reach the choice of law issue and assume that Texas law should apply. *See N.K. Parrish, Inc. v. Southwest Beef Industries Corp.*, 638 F.2d 1366, 1370 n. 3 (5th Cir.) ("The parties and the trial court have interpreted the agency agreement under Texas law.... Because neither party"raised or briefed [the choice of law] issue on appeal, we assume Texas law should apply."), *cert. denied,* 454 U.S. 1047, 102 S.Ct. 587, 70 L.Ed.2d 488 (1981). The district court also determined that the exposure theory enunciated in the *Forty-Eight* opinion should apply to silicosis, which like asbestosis, develops through prolonged exposure to silica dusts.[5] Finally, although the Texas courts have apparently not ruled on the exposure

---

**3.** The *Forty-Eight* court had relied upon general principles of contract interpretation and construction not peculiar to Illinois and New Jersey law. *See Forty-Eight Insulations, Inc.,* 633 F.2d at 1222–26.

**4.** The suggestion has been made that the *Forty-Eight* court did not address "the issue of allocating indemnification expenses," but rather only the issue of apportioning defense costs. *Keene Corp. v. Insurance Co. of North America,* 667 F.2d 1034, 1042 n. 16 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982). Clearly, the *Porter* Court did, however, adopt the *Forty-Eight* rule of apportionment as applied to indemnification expenses. *See also Ducre v. Executive Officers of Halter Marine, Inc.,* 752 F.2d 976, 992, 994 (5th Cir. 1985) (recapitulating *Porter* holding).

**5.** The applicability of the exposure theory of insurance triggerage greatly depends upon the medical, factual nature of the disease involved and what it shows about when bodily injury takes place. *See Ducre,* 752 F.2d at 994 ("an important underpinning of *Porter* and *Forty-*

*Eight Insulations* was the medical evidence in those records to the effect that each exposure to asbestos fibers resulted in damage to the victims' lungs"); *Insurance Co. of North America v. Forty-Eight Insulations, Inc.,* 657 F.2d 814, 815–16 (6th Cir.1981) (extending applicability of exposure theory to other diseases besides asbestosis in part because of factual characteristics of these diseases); *see generally Royal Globe Ins. Co. v. Great American Ins. Corp.,* 118 Mich.App. 735, 325 N.W.2d 556, 558 (1982).

In *Ducre,* a silicosis case, an insurer argued that the so-called manifestation theory, not the exposure theory, should be applied to determine when insurance coverage was triggered. *Ducre,* 752 F.2d at 991. The *Ducre* Court ruled in favor of the exposure theory. *Id.* at 991–94. The Court noted, "There is no evidence ... that silicosis is sufficiently different from asbestosis, in onset or development, to justify distinguishing *Porter.*" *Id.* at 994. The Court stated, however, that the "parties should be afforded the opportunity to develop" the evidence. *Id.* In the present case, all the parties agree that the exposure theory applies to the liability arising from the silicosis claims against Clemtex.

theory and rule of apportionment, the district court in the instant case determined, at least implicitly, that Texas law would adopt the theory and the rule.[6] Since the parties have not challenged these determinations by the district court, we do not review them and proceed directly to the deductibles dispute. *See McGee v. Estelle,* 722 F.2d 1206, 1213 (5th Cir.1984) ("we have repeatedly refused to examine issues not raised in the appellate briefs absent the possibility of injustice so grave as to warrant disregard of usual procedural rules" (footnote omitted)).

Each of the three insurance policies at issue provides for a deductible on a per claim basis. Although the amount of the deductible varies from policy to policy, each policy defines the per claim basis identically:

> The deductible amounts stated in the schedule apply as follows:
>
> (a) PER CLAIM BASIS—If the deductible is on a "per claim" basis, the deductible amount applies under the Bodily Injury Liability or Property Damage Liability Coverage, respectively, to all damages because of bodily injury sustained by one person ... as the result of any one occurrence.

(Emphasis omitted). Clemtex argues on appeal, as it did before the district court, that the deductible provision is ambiguous as applied to the context in which Clemtex's liability under a single silicosis claim has been apportioned to multiple insurers according to the *Forty-Eight* rule of apportionment. The defendant insurers argue that the deductible provision is unambiguous and entitles each insurer to a full deductible regardless of apportioned liability. The district court concluded that the provision is not ambiguous and ruled, as noted, in favor of defendants' interpretation.

We note that, under Texas law, the court determines as a matter of law whether a contract, including an insurance contract, is ambiguous. *See Continental Savings Ass'n v. United States Fidelity and Guaranty Co.,* 762 F.2d 1239, 1245 (5th Cir.), *reh'g granted in part on other grounds,* 768 F.2d 89 (5th Cir.1985); *St. Paul Mercury Insurance Co. v. Price,* 359 F.2d 74, 76 (5th Cir.1966); *Melton v. Ranger Insurance Co.,* 515 S.W.2d 371, 373 (Tex.Civ. App.—Ft. Worth 1974, writ ref'd n.r.e.). Texas law has defined *ambiguity* to mean " 'an uncertainty of meaning or expression used in a written instrument: wanting clearness or definiteness; difficult to comprehend or distinguish; or doubtful import.' " *Price,* 359 F.2d at 76 n. 2 (quoting *Business Men's Assurance Ass'n v. Read,* 48 S.W.2d 678, 680 (Tex.Civ.App.—Amarillo 1932, no writ)).

The deductible in the insurance policies at issue here applies to each "claim," defined to mean "all damages because of bodily injury sustained by one person ... as the result of any one occurrence." As applied to the present context, the claim intended must be the claim asserted by a silicosis victim[7] against Clemtex for dam-

---

**6.** We note that the promise of indemnification and definitions of the terms *bodily injury* and *occurrence* in each of the three insurance policies in the present case do not differ in significant particulars from the comparable provisions (set forth *supra* at p. 1273) interpreted by the Sixth Circuit in *Forty-Eight.* For instance, defendant Foremost's insurance policy provides:

> The [insurer] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... bodily injury or ... property damage to which this insurance applies, caused by an occurrence....
>
> ....
>
> When used in this policy (including endorsements forming a part hereof):

> ....
>
> "bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;
>
> ....
>
> "occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury....

(Emphasis omitted). The policies supplied to Clemtex by defendants Southeastern and Great Atlantic contain virtually identical provisions.

**7.** Sometimes the term *claim* has been interpreted to mean, depending on the context, a claim for indemnification by the insured against the insurer instead of a claim for damages by an

ages "because of *bodily injury* sustained by" the silicosis victim "as the result of any one *occurrence.*" We turn now to the *Forty-Eight* opinion for the meaning of the terms *bodily injury* and *occurrence* in the context of progressive disease developed through exposure over time to airborne substances or particles.

The *Forty-Eight* court stated repeatedly that " 'bodily injury' takes place at or shortly after inhalation." *Forty-Eight Insulations, Inc.*, 633 F.2d at 1217 n. 10.[8] The court observed further that, "[b]ecause each additional inhalation of asbestos fibers results in the build-up of additional scar tissue in the lungs, the district court deemed the 'bodily injury' to occur whenever asbestos fibers were inhaled." *Id.* at 1218. Moreover, the court seemingly rejected the interpretation holding that "the inhalation of each asbestos fiber is deemed to be a separate 'bodily injury.' " *Id.* at 1226 n. 28. Once this interpretation is set aside, there is no logical stopping point; the victim's bodily injury through exposure to airborne particles, of course, does not cease and begin again because one of Clemtex's insurance policy periods has ended and a new period has begun. The *Forty-Eight* court's analysis, it seems safe to say, equates the full course of a victim's exposure (and virtually simultaneous tissue damage) with continuous bodily injury. The court itself used a similar expression. *See id.* at 1217 ("The advocates of the exposure theory characterize asbestosis as a series of continuing injuries to the body which accumulate to cause death or disability").[9]

The term *occurrence*, as applied to the present context, must likewise be interpreted to mean one continuous occurrence. The policies expressly define the term to encompass "continuous or repeated exposure to conditions." Again, the *Forty-Eight* opinion is instructive: "[U]nder the terms of the policies, additional exposure to asbestos fibers is treated as arising out of the same occurrence." *Forty-Eight Insulations, Inc.*, 633 F.2d at 1226 n. 28.

Having established these interpretations of the various terms, we interpret the insurance contracts at issue to provide for a deductible for each damages claim by a silicosis victim against Clemtex for all the tissue damage and ultimate disease (continuous bodily injury) resulting from the victim's exposure to Clemtex's products (continuous occurrence).[10] Each defendant, however, indemnifies Clemtex, under the *Forty-Eight* rule of apportionment, for only part of Clemtex's liability under a silicosis victim's claim. It follows that each

---

injured party against the insured. *Beaumont-Gribin-Von Dyl Management Co. v. California Union Ins. Co.*, 63 Cal.App.3d 617, 623–25, 134 Cal.Rptr. 25, 28–29 (1976). In the present case, however, the deductible provision focusses on "all damages ... sustained by one person," not liability incurred by the insured. Consequently, as applied to the present context, the only tenable interpretation of the term *claim* holds it to mean the claim for damages by a silicosis victim against Clemtex. *See generally Lamberton v. Travelers Indem. Co.*, 346 A.2d 167, 168–69 (Del.1975).

8. *See Forty-Eight Insulations, Inc.*, 633 F.2d at 1218 ("Injury, in the sense that there is tissue damage, occurs shortly after the initial inhalation of asbestos fibers"), 1222 (" 'bodily injury' in the form of tissue damage takes place at or shortly after the initial inhalation of asbestos fibers"), 1223 (" 'Bodily injury' should be construed to include the tissue damage which takes place upon initial inhalation of asbestos").

9. *See Commercial Union Ins. Co. v. Sepco Corp.*, 765 F.2d 1543, 1546 (11th Cir.1985) (quoting *Forty-Eight Insulations, Inc.*, 633 F.2d at 1223):
   We believe that the exposure theory is more accurately analyzed as positing not that each inhalation of asbestos fibers results in bodily injury, but rather that every asbestos-related injury results from inhalation of asbestos fibers. Because such inhalation can occur only upon exposure to asbestos, and because it is impossible practically to determine the point at which the fibers actually imbed themselves in the victim's lungs, to equate exposure to asbestos with "bodily injury" caused by the inhalation of the asbestos is the "superior interpretation of the contract provisions."

10. Note that even if each victim is deemed to suffer a series of individual bodily injuries, these injuries would arise out of "continuous or repeated exposure to conditions" and thus out of a single continuous occurrence. So understood, there would still be but one deductible for each victim's claim against Clemtex.

insurer herein has been demanding a full deductible for a partial claim. The insurance policies do not clearly so provide. Clemtex, on the other hand, urges this Court to construe the policies to provide for a reduced deductible to reflect each insurer's apportioned indemnification liability. Thus, for instance, if an insurer must indemnify Clemtex for only one tenth of Clemtex's liability under a silicosis claim, the insurer would be entitled to only one tenth of a $10,000 per claim deductible, in other words $1,000. Yet, the policies do not expressly provide for reduced deductibles. At best, the deductible provisions, as applied to the present context, show " 'uncertainty of meaning' " and want " 'clearness or definiteness' " and are therefore ambiguous. *Price,* 359 F.2d at 76 n. 2 (quoting *Read,* 48 S.W.2d at 680).

The parties' summary judgment motions before the district court relied upon deposition testimony concerning, among other things, Clemtex's understanding of the deductible provisions at the time Clemtex entered the insurance contracts. According to this testimony, Clemtex understood that an insurer would be entitled to a deductible if it indemnified Clemtex for the total amount of a claim against Clemtex. The district court made a similar finding. This evidence of intent may have implications for resolving the ambiguity we have found. *See Commercial Standard Insurance Co. v. Quality Meat and Provision Co.,* 556 S.W.2d 134, 135 (Ct.Civ.App.—Ft. Worth 1977, no writ) ("ambiguity [in an insurance contract] justified the reception of evidence of intent"); *see also Thompson v. Hambrick,* 508 S.W.2d 949, 952 (Ct.Civ.App.—Dallas 1974, writ ref'd n.r.e.). Clemtex urges this Court to apply "the well-settled rule that insurance policies will be interpreted liberally in favor of the insured and ambiguities strictly against the insurer, es-

pecially when dealing with exceptions and words of limitation." *Dow Chemical Co. v. Royal Indemnity Co.,* 635 F.2d 379, 386 (5th Cir. Unit A 1981) (discussing Texas law). Nevertheless, having established that the deductible provisions are ambiguous, we leave it to the district court, using extrinsic evidence and other permissible aids to interpretation, to resolve the ambiguity on remand. *Monte Christo Drilling Corp. v. Universal Insurance Co.,* 376 F.2d 61, 64 (5th Cir.1967); *see Vetrano v. Aetna Life & Casualty,* 612 S.W.2d 689, 693 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ).

Defendants point, however, to footnote six of the *Forty-Eight* opinion, where the *Forty-Eight* court observed that, "starting in 1976," the manufacturer's current insurance "policy contained a $100,000 per person deductible for asbestosis cases. Since most asbestosis cases have been settling for less than $100,000, this means that, as a practical matter, [the manufacturer] is uninsured for asbestosis occurring after 1976." *Forty-Eight Insulations, Inc.,* 633 F.2d at 1215 n. 6. Defendants concede that the *Forty-Eight* court did not rule on the deductibles issue before this Court. Moreover, the quoted language does not preclude a reduction of the deductible amount. First, the *Forty-Eight* court's contrast of an asbestosis claim settling for less than $100,000 with the manufacturer's current policy's $100,000 deductible may suggest that the court had in mind an asbestosis claim for which the manufacturer's current policy would be fully responsible. Second, the court was careful to note that it was referring to "asbestosis occurring after 1976." Under the terms of the *Forty-Eight* opinion, this means tissue damage, due to asbestos exposure, that takes place after 1976.[11] An insurer responsible for

11. The *Forty-Eight* opinion also specified a means by which such exposure could take place after 1976, even though the manufacturer's products contained no asbestos after 1970. 633 F.2d at 1214 (the demolition of old buildings containing asbestos materials); *see also Forty-Eight Insulations, Inc.,* 451 F.Supp. 1230 at 1233 (1978) ("In 1970 [the manufacturer] discontinued

the use of asbestos in all its products. This fact does not necessarily end the possibility of its asbestos product liability, however, in that demolition or removal of structures containing old insulating materials may cause asbestos to become airborne and may cause injury to persons employed in such activity.")

the full indemnification expenses of an underlying asbestosis claim would, even under Clemtex's interpretation, be entitled to a full deductible.[12]

Finally, defendants also tend to argue, without citation to authority, that the exposure theory and rule of apportionment—or some version of it—preceded the *Forty-Eight* and *Porter* decisions. According to defendants, these decisions merely simplified the rule of apportionment by dividing indemnification liability according to relative lengths of exposure as opposed to some more complex inquiry into causation.

In making this argument, defendants would apparently suggest that no ambiguity arises from the application of promises of indemnification in successive insurance policies to the progressive disease context.[13] According to defendants, Clemtex should have known that the exposure theory and rule of apportionment would apply. It should also have known, defendants argue, that the insurance contracts would entitle each insurer to a full deductible, though the insurer bears responsibility for only an apportioned share of indemnification liability.[14]

The continuing judicial debate about the appropriate trigger of insurance coverage refutes defendants' contention that the ex-posure theory was the established rule at the time the instant insurance contracts were formed. *Compare Forty-Eight Insulations, Inc. and Porter with, e.g., Keene Corp. v. Insurance Co. of North America*, 667 F.2d 1034, 1045 (D.C.Cir.1981) (multiple trigger theory), *cert. denied*, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982), *and Eagle-Picher Industries, Inc. v. Liberty Mutual Insurance Co.*, 682 F.2d 12, 24 (1st Cir.1982) (manifestation theory), *cert. denied*, 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983), *and American Home Products Corp. v. Liberty Mutual Insurance Co.*, 748 F.2d 760, 764 (2d Cir.1984) (injury in fact as trigger).

Courts have likewise differed over the rule of apportionment. *Compare Forty-Eight Insulations, Inc.*, 633 F.2d at 1225 ("The insurer's liability is not 'joint and several', it is individual and proportionate"), *with Keene Corp.*, 667 F.2d at 1050 & n. 35 ("holding each insurer fully liable," although permitting apportionment according to applicable other insurance clauses and, possibly, the doctrine of contribution).[15] Some cases, at least in the workers' compensation context, have applied a rule similar to the *Forty-Eight* rule of apportionment. In *Century Indemnity Co. v. Klipfel*, 99 Colo. 213, 61 P.2d 842, 843 (1936), for instance, a worker twice suf-

---

**12.** Although the parties have not cited it, we take note of a previous Fifth Circuit opinion raising the deductibles issue. In *National Serv. Indus., Inc. v. Hartford Accident & Indem. Co.*, 661 F.2d 458, 462 (5th Cir. Unit B.1981), according to one of the parties, a tort victim's exposure to the insured's product had straddled two insurance policy periods. Each of the two policies had a deductible provision. Speaking of the *Forty-Eight* court's exposure theory, the *National Service* Court observed: "[I]f the exposure theory applies, [the insured] would have been liable for all or part of both deductibles, depending on the extent of exposure during each policy period." *Id.* at 463.

If the *National Service* Court may be understood as envisioning possible payment of "all ... of both deductibles," its mention of this possibility cuts against Clemtex's interpretation of the insurance contracts in the present case. On the other hand, the Court's mention of payment of "part of both deductibles" admits of the possibility of a reduction in the deductible amounts. This brief discussion of the deductibles issue in *National Service* tends to point in both directions, is inconclusive, and thus not binding on the district court when construing the instant deductible provisions on remand.

**13.** This suggestion contradicts part of the reasoning of the *Forty-Eight* opinion: "We think that a better view is that the contractual terms in issue here, 'bodily injury' and 'occurrence' are inherently ambiguous as applied to the progressive disease context before us." 633 F.2d at 1222.

**14.** Elsewhere in their briefs, defendants state that the deductibles issue in this case is a question of first impression.

**15.** See *Acands Inc. v. Aetna Casualty and Sur. Co.*, 764 F.2d 968, 974 (3d Cir.1985), for another possible variation.

fered injury, resulting in permanent disability. The worker's employer had had a different insurance carrier at the time of each injury. The court upheld an administrative order directing each carrier to pay one half of the compensation awarded: "Each [insurer] has contracted to indemnify the employer for a portion of a disability caused by two accidents for which the employer is unquestionably liable." *Id.* 61 P.2d at 846.[16] However well-established this rule of apportionment in *Klipfel* and like cases,[17] it does not preclude ambiguity in the application of a deductible provision. The question in the disability setting would seemingly turn, as in the present case, on whether a per claim deductible provision provides for a full deductible regardless of whether the insurer bears full or only partial indemnification responsibility for a disability claim. *Klipfel* and like cases do not address the issue.[18]

The judgment of the district court is REVERSED, and the case REMANDED.

REVERSED and REMANDED.

**16.** For similar and somewhat similar cases, see generally *Employers' Casualty Co. v. United States Fidelity & Guar. Co.,* 214 Ark. 40, 214 S.W.2d 774, 777 (1948); *Mund v. Farmers' Coop.,* 139 Conn. 338, 94 A.2d 19, 22 (1952); *Stansbury v. National Auto. & Casualty Ins. Co.,* 52 So.2d 300, 304 (La.Ct.App.), *amended on other grounds sub nom. Stansbury v. Ocean Accident & Guarantee Corp.,* 52 So.2d 331 (La.Ct. App.1951); *Meszaros v. Goldman,* 307 N.Y. 296, 121 N.E.2d 232, 233–34 (1954); *Anderson v. Babcock & Wilcox Co.,* 256 N.Y. 146, 175 N.E. 654, 655 (1931); *Wiggins v. West Side Iron Works,* 279 A.D. 1126, 112 N.Y.S.2d 770, 771 (1952); *Leonescu v. Star Liquor Dealers, Inc.,* 279 A.D. 492, 111 N.Y.S.2d 270, 271–72 (1952); *Zuk v. McGuire Bros. Inc.,* 277 A.D. 956, 99 N.Y.S.2d 617, 618 (1950).

**17.** Some courts have established a different rule. In *Fireman's Fund Indem. Co. v. State Indus. Accident Comm'n,* 39 Cal.2d 831, 250 P.2d 148, 151 (1952), for instance, each of two successive insurers was held jointly and severally liable vis-á-vis the employee for disability resulting from conditions spanning both insurers' policy periods, although there might be apportionment in a separate proceeding as between the two insurers, "based on the various factors leading to the disability."

**18.** Defendants also argue, citing the *Keene Corp.* opinion, that each policy, once triggered, is fully liable to the limits of the policy. *Keene,* of course, was referring to each insurer's liability to indemnify fully the insured. 667 F.2d at 1050. *Forty-Eight,* by contrast, established "individual and proportionate" indemnification liability for each triggered policy. 633 F.2d at 1225. Without meaning to express either approval or disapproval, we note that the *Forty-Eight* court saw in its rule of apportionment the potential for stacked coverage and therefore affirmed the district court's resolution of the matter, which provided that " 'no insurer should be held liable for any one case to indemnify [the manufacturer] for judgment liability for more than the highest single yearly limit in a policy that existed during the period of the claimant's exposure for which judgment was obtained.' " *Id.* at 1226 n. 28 (quoting *Forty-Eight Insulations, Inc.,* 451 F.Supp. at 1243). Defendants herein have not sought a judgment declaring the limits of their policies. Their arguments concerning policy limits, to the extent they bear, if at all, on the construction of the deductible provisions, should be addressed to the district court on remand.