## NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff

v.

## LAFARGE CORPORATION, et al. Defendants and Third–Party Plaintiffs

v.

## TRAVELERS INDEMNITY COMPANY, et al. Third–Party Defendants

### Civil No. H–90–2390.

United States District Court, D. Maryland.

Jan. 8, 1996.

---

Jill A. Douthett, Elizabeth W. Fox, Michael T. Strarczewski, Jan Fink Call and Hoyle, Morris & Kerr, Philadelphia, PA and Robert E. Powell and Smith, Somerville & Case, Baltimore, MD, for third-party plaintiffs Lafarge Corporation and Lafarge Canada, Inc.

Sidney G. Leech, Linda S. Woolf and Goodell, DeVries, Leech & Gray, Baltimore, MD, for third-party defendant Travelers Indemnity Company.

M. Bradley Hallwig, Gregory L. Van Geison and Anderson, Coe & King, Baltimore, MD, for third-party defendant Hartford Casualty Insurance Company.

Alan Greenberg, Joanne Sutkin and Rawle & Henderson, Marlton, NJ, for third-party defendant Boreal Assurances, Inc.

ALEXANDER HARVEY, II, Senior District Judge.

The jury trial in this consolidated case commenced on October 16, 1995 and lasted for almost three weeks. After deliberating for some five and one-half hours over a period of two days, the jury returned its verdict on November 2, 1995. The jury determined $8,410,000 to be the amount of attorneys' fees and expenses which were reasonably and necessarily incurred by Lafarge Corporation and/or Lafarge Canada, Inc. (hereinafter "Lafarge") in defending the claims asserted against them by Lone Star Corporation in the prior litigation.[1] This award amounted to 75.75% of the amount of attorneys' fees and expenses sought by Lafarge at the trial. The jury also determined $11,075,000 to be the amount of expert fees, consultants' fees and expenses similarly incurred by Lafarge. This award amounted to 67.67% of the amount of expert fees and expenses sought by Lafarge at the trial. The total amount of the jury award thus came to $19,485,000.

After the jury had returned its verdict on November 2, 1995, the Court discussed with counsel the form and content of the final judgments to be entered against the three insurer defendants. Prior rulings by the Court have established that the aggregate amount of the jury's award must be equitably apportioned among the Lafarge plaintiffs, defendant Travelers Indemnity Company (hereinafter "Travelers"), defendant Hartford Casualty Insurance Company (hereinafter "Hartford") and defendant Boreal Assurances, Inc. (hereinafter "Boreal").[2] Before any such judgments can be entered by the Court against these defendants, a number of questions remain for the Court's determination. It was agreed that these issues would be addressed by the parties in post-trial memoranda.

The Lafarge plaintiffs have now filed a motion to mold the jury verdict.[3] Defendants Travelers, Hartford and Boreal have opposed Lafarge's motion and have submitted figures which they assert would represent the proper amounts of the judgments to be entered against them in this case. Travelers, Hartford and Boreal have also filed a motion requesting the Court to permit limited discovery regarding the implementation of the settlement agreement between the Lafarge parties and Nationwide Mutual Insurance Company (hereinafter "Nationwide"). Extensive memoranda and numerous exhibits have been filed by the parties in support of their positions. A hearing has been held in open Court. Following its consideration of

---

1. For a discussion of the extensive proceedings in the underlying case, *see In re Lone Star Industries, Inc., Concrete Railroad Cross Ties Litigation,* 882 F.Supp. 482 (D.Md.1995).

2. Boreal was formerly known as Laurentienne Generale Compagnie D'Assurance.

3. Under the pleadings, the two Lafarge corporations are third-party plaintiffs and the three insurance companies are third-party defendants. For purposes of convenience, the Lafarge entities will be referred to as the plaintiffs and the three insurers will be referred to as the defendants.

the arguments presented, the Court will rule herein on those issues which must be decided before judgments against the defendants can be entered in this case.

The following issues remain:

(1) Determination of the share of the aggregate amount of the total verdict to be allocated to Travelers, to Hartford and to Boreal;

(2) Determination of the amount of and the effect of the deductibles contained in the Hartford and Boreal policies on the shares allocated to each of them;

(3) Determination of the amount of pre-tender defense expenses to be excluded from the judgments entered against each of the remaining three defendants;

(4) Determination of the effect, if any, on the judgments to be entered of the settlements between Lafarge and Nationwide and between Lafarge and Halifax Insurance Company ("Halifax"); and

(5) Determination of the amount of pre-judgment interest, if any, to be added to the allocated share of the award payable by each of the three remaining defendants.

## I

### Apportionment of Award

In its Memorandum and Order entered in this case on July 15, 1994, the Court concluded that Lafarge's reasonable defense costs incurred in the underlying litigation should be allocated on a *pro rata* basis among all of Lafarge's primary insurers, with the exception of Northumberland General Insurance Company, based upon the number of years during which each of the insurers provided coverage for one of the Lafarge entities. Based on such an apportionment scheme, the Court ruled that Hartford must bear one-twelfth of the defense costs, while Travelers and Boreal (then known as Laurentienne) must each bear one-sixth of the defense costs. *See* Memorandum and Order of July 15, 1994, at 29.

The Court later ruled that Simcoe & Erie General Insurance Company ("Simcoe & Erie") should be required to pay an equal share with Halifax of Lafarge's defense costs,

with the result that a one twenty-fourth share would be allocated to Simcoe & Erie and a one twenty-fourth share to Halifax. *See* Memorandum and Order of October 6, 1995, at 12. Since INA, CIGNA of Canada and Simcoe & Erie issued so-called fronting policies to Lafarge Corporation and/or to Lafarge Canada, and since the Lafarge parties are therefore self-insurers under those policies, Lafarge must under the Court's earlier rulings itself bear nine twenty-fourths of the jury's award.

With the trial concluded, the Court will now re-affirm its prior rulings relating to the equitable apportionment of the amount awarded by the jury as reasonable and necessary defense costs incurred by Lafarge in the underlying litigation. Before any deductions are made from the calculations of each defendant's share, Travelers is responsible for one-sixth of $19,485,000 less pre-tender expenses; Hartford is responsible for one-twelfth of this amount; and Boreal is responsible for one-sixth of this amount. Whether these shares are subject to any further increases or deductions will be discussed hereinbelow.

## II

### Apportionment of Deductibles

In its pretrial motion for partial summary judgment, Lafarge requested that the Court: (1) apportion Lafarge's deductible obligations under each of the Hartford and Boreal policies using a method similar to that previously employed by the Court in apportioning Lafarge's defense costs; and (2) offset only those prorated deductibles against amounts owed to Lafarge by its primary insurers as payment of apportioned defense costs. In its Memorandum and Order of August 21, 1995, the Court denied Lafarge's motion for partial summary judgment, stating (slip op. at 40):

Although the Court is inclined to agree with Lafarge that the apportionment of applicable deductibles may eventually be warranted in this case, any such apportionment is premature at this time. It is apparent that disputed issues of material fact exist in the present record pertaining to whether the losses incurred by Lafarge

in the underlying litigation were the result of one or more "occurrences" covered by the policies at issue here.

Following the close of all the evidence at the trial, the Court, after hearing argument, ruled as a matter of law that all of Lafarge's liability arose out of a single occurrence (Tr. 4026–4041). In view of the Court's determination that there was a single occurrence under the Hartford and Boreal policies and that Lafarge would be responsible for only one deductible under each policy, a decision on the question concerning the apportionment of the deductibles is now appropriate.

As noted hereinabove, under the allocation scheme previously approved by this Court, Hartford must pay one-twelfth of the jury award and Boreal must pay one-sixth of such award. Lafarge argues that, because these insurers are not being held responsible to the full extent of their policy obligations, Lafarge should not be charged with the full deductible contained in each policy. The insurers, on the other hand, insist that the language in their policies is clear and unambiguous, and that Lafarge is not entitled to any reduction in each deductible.

Questions pertaining to the apportionment of deductibles in a case of this sort were discussed very recently by the Fifth Circuit Court of Appeals in *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389 (5th Cir.1995). In that case, the Court construed Hartford's obligations under the same policy which is at issue here. The District Court in that case had concluded, in ruling on a summary judgment motion, that, although the policy language was unambiguous, fairness mandated an apportionment of the deductibles. The Court said:

> [I]t would be patently unfair to expect Lafarge to satisfy the entire amount of every deductible in every insurance policy. If that were the case, Lafarge would recover very little, if any, of its defense costs. That is not the result the Court intended when it decided to reduce Hartford's portion of the total defense costs.

*Lafarge Corp. v. Hartford Cas. Ins. Co.*, No. H–91–0940 (SBK), slip op. at 3 (S.D.Tex. Dec. 7, 1991), *aff'd in part, rev'd in part on other grounds,* 61 F.3d. 389 (5th Cir.1995).

Moreover, the District Court concluded that payment of a full deductible under a policy that is responsible for only a portion of the defense costs "does not seem to coincide with either the spirit behind the insurance contract between the parties, or this Court's previous Order which attempted to apportion the defense as equitably as possible." 61 F.3d at 401, *quoting* slip op. at 8.

The Fifth Circuit affirmed the lower court's apportionment of deductibles, but for a slightly different reason. Although the District Court based its decision on equitable considerations because it considered the policy language unambiguous, the Fifth Circuit ruled that its decision in *Clemtex, Inc. v. Southeastern Fidelity Ins. Co.*, 807 F.2d 1271 (5th Cir.1987) provided clear precedential support for the District Court's conclusion. *Lafarge v. Hartford,* 61 F.3d at 401.

In *Clemtex,* the Fifth Circuit interpreted a "per claim" policy with regard to claims filed by numerous victims of silicosis. The Court determined that Clemtex was responsible for one deductible for each victim. Noting that, under the equitable apportionment scheme adopted in that case, each insurance company was responsible for only a portion of Clemtex's liability, the Court stated:

> It follows that each insurer herein has been demanding a full deductible for a partial claim. The insurance policies do not clearly so provide. Clemtex, on the other hand, urges this Court to construe the policies to provide for a reduced deductible to reflect each insurer's apportioned indemnification liability.... Yet the policies do not expressly provide for reduced deductibles.

*Clemtex,* 807 F.2d at 1276–77. The Court then remanded the action to the district court for a resolution of the ambiguity in the policy language. *Id.* at 1277.

Based on its reasoning in *Clemtex,* the Fifth Circuit in *Lafarge v. Hartford* concluded that the deductible provisions of the Hartford policy were ambiguous because they did not address a situation in which defense costs were apportioned. *Lafarge v. Hartford,* 61 F.3d at 401. The Court decided that when such ambiguity exists, a district court "[does]

not have to rely on equitable principles in order to reduce the deductible obligation; its decision is supported simply as a valid choice of one of at least two reasonable interpretations of the policy." *Id.*

■ Applying these principles to the facts of record here, this Court concludes that the deductibles for which Lafarge is responsible must be apportioned in the same manner as this Court has apportioned defendants' responsibility for defense costs. The Fifth Circuit's decision in *Lafarge v. Hartford* is especially compelling here because it addresses the same Hartford policy at issue in this case. Insofar as the Boreal policy is concerned, the Court would note that it, like the Hartford policy, does not contain language relating to the impact of an apportionment scheme on the payment of deductibles. This Court is satisfied that a Canadian court, construing the Boreal policy, would apply the principles enunciated in *Lafarge v. Hartford.*

This Court would also agree with the District Court in *Lafarge v. Hartford* that under circumstances like those present in this case fairness mandates the apportionment of deductibles. Nevertheless, the determination here will be based on the Fifth Circuit's decision in *Lafarge v. Hartford.* The language of the Hartford and Boreal policies is ambiguous because it does not address the situation in which defense costs are being apportioned, as they are in this case. Accordingly, this Court will here choose between "one of at least two reasonable interpretations of the policy." *See id.* at 401. Under this Court's apportionment scheme, Hartford and Boreal are responsible for only a fraction of what they might otherwise have to pay as defense costs. A reasonable interpretation of these policies requires that under the circumstances here, there should be a similar proration of the deductibles.

Under the apportionment scheme previously adopted by the Court, Lafarge will be responsible for the payment of one-twelfth of the $250,000 deductible contained in the Hartford policy, or $20,833.33. The judgment to be entered against Hartford will be reduced by this amount. Boreal has been allocated one-sixth of the defense costs, one-twelfth for the 1986–87 policy and one-twelfth for the 1987–88 policy. Lafarge therefore is responsible for the payment of one-sixth of the aggregate amount of the deductibles in those two policies.

The parties dispute provisions of both Boreal policies insofar as the amounts of the deductibles are concerned. Under the heading "Subject to the following Deductibles," the policies list a $250,000 deductible per occurrence "As respects Defective Products Extension 'Rip and Tear.'" The policies then list a $100,000 deductible per occurrence "As respects all other coverages." Lafarge argues that the lower deductible is applicable in this case, while Boreal contends that the "rip and tear" provision controls.

Although the "rip and tear" issue has arisen several times in this litigation prior to the trial, the Court has never decided on the merits whether the underlying litigation involved "rip and tear" damage. Previously, Halifax and Simcoe & Erie debated whether or not the "rip and tear" exclusion in the Halifax policy applied and whether the Simcoe & Erie policy was accordingly implicated. In its Memorandum and Order of August 21, 1995, this Court determined that Halifax had no duty to indemnify Lafarge because its indemnity obligations were not triggered until after the expiration of the Halifax policy. (Slip op. at 25–28). It was therefore not necessary for the Court to decide whether or not "rip and tear" damage had in fact occurred.

In its most recent Memorandum and Order of October 6, 1995, the Court concluded that the allegations in the complaint in the Lone Star action created a potential for "rip and tear" coverage. (Slip op. at 9–12). Accordingly, the Court determined that the "rip and tear" coverage under the Simcoe & Erie policy imposed on that insurer a duty to defend. However, because there was a possibility that the "rip and tear" coverage did not apply, Halifax also had a duty to defend. The Court therefore divided equally between Simcoe & Erie and Halifax the one-twelfth share originally allocated to Halifax. (Slip op. at 4–13). In reaching its earlier decisions on the "rip and tear" issue, the Court has never definitively determined whether or not

"rip and tear" liability arose in the underlying action.

The "rip and tear" issue now arises in a somewhat different context, namely in connection with the Court's determination of the particular deductible in the Boreal policies to be applied here. Because this coverage dispute arises as a result of Boreal's duty to defend under its policies, the Court must once again look to the allegations of the complaints in the underlying action which gave rise to Boreal's duty to defend. As the Court has ruled previously, a potential for "rip and tear" coverage existed at the time that the complaints were filed in the *Lone Star* action. Memorandum and Order of October 6, 1995, at 10. At that time, the "rip and tear" provisions of the Boreal policies, including the $250,000 "rip and tear" deductible provisions, were implicated. The Court accordingly concludes that the deductible obligation of Lafarge under each policy was therefore the $250,000 amount, or a total of $500,000 for both policies.

As noted hereinabove, Boreal is under each policy responsible for one-sixth of the jury award, less pre-tender expenses. The two deductibles total $500,000, and Lafarge is responsible for the payment of one-sixth of that figure. The judgment to be entered against Boreal will therefore be reduced by $83,333.33, representing an apportioned share of the deductibles in the two policy years.

### III

#### Exclusion of Pre–Tender Expenses

Following the close of all the evidence at the trial, the Court, after hearing argument, ruled that the pre-tender defense costs incurred by Lafarge were not the responsibility of the defendants under the policies at issue here (Tr. 4048–4049). The parties agreed that determination of the amounts to be excluded would be made by the Court after the jury had returned its verdict.

Travelers, Hartford and Lafarge have now agreed that, insofar as claims against Travelers and Hartford are concerned, the actual amounts spent by Lafarge before notice of the *Lone Star* claim totalled $146,000. It is further agreed that this is equivalent to $109,485.02 in terms of the jury award. Insofar as Lafarge's claim against Boreal is concerned, Lafarge has further stipulated with Boreal that invoices dated through May 1, 1990 should be excluded from the calculations, or the amount of $225,786.39. It is further agreed that this is equivalent to $185,392.15 in terms of the jury award.

In view of the parties' agreements, these amounts will be deducted from the jury's aggregate award before the applicable percentages are applied.

### IV

#### The Halifax and Nationwide Settlements

Lafarge has settled its claims for the recovery of defense costs asserted against Nationwide and against Halifax. A settlement was reached with Nationwide at a very early stage of this litigation. After several days of trial, Lafarge also settled with Halifax. Under the Nationwide settlement, Lafarge was paid a total of $4,588,760.15 attributable to defense expenses, including interest.[4] Under the Halifax settlement, the agreed amount was $1,300,000.

■ Noting that the Court has previously ruled that Nationwide is responsible for payment of one-sixth of Lafarge's reasonable defense costs and that Halifax is responsible for the payment of one twenty-fourth of such costs, defendants Travelers, Hartford and Boreal contend that any payment by the settling insurers in excess of these amounts should be deducted from the award made by the jury. Based on this contention, these insurers have filed a motion requesting the Court to permit them to undertake limited discovery regarding the terms of and the

---

4. Settlement was reached of various other coverage claims asserted by Lafarge against Nationwide in addition to that asserted by Lafarge in this case. *See Lafarge v. Hartford,* 61 F.3d at

400. Lafarge has represented that the amount attributable to defense expenses plus interest in this case equals $4,588,760.15.

implementation of the Nationwide settlement.[5]

After due consideration of the parties' arguments, the Court concludes that no deductions from the jury award should be made because of the settlements which Lafarge entered into with Nationwide and Halifax. Accordingly, there is no need for further discovery relating to the implementation of the settlement agreement between Nationwide and Lafarge.[6]

At a very early stage of this litigation, counsel for Nationwide and counsel for Lafarge commendably agreed to a settlement of Lafarge's claim against Nationwide for defense costs. Not only did Nationwide by this settlement avoid the risk of the entry of a very substantial judgment against it plus prejudgment interest, but Nationwide also avoided the enormous expense which has been incurred by defendants Travelers, Hartford and Boreal in litigating this case to a conclusion in this Court and beyond. Quite obviously, attorneys' fees, expert fees, and other costs incurred by these insurers have been very substantial during the lengthy five year period that the case has been aggressively litigated by these defendants in this Court. At a date much later than the Nationwide settlement, Halifax and Lafarge agreed to a settlement shortly after the trial began. Halifax thus avoided additional attorneys' fees and costs which would have been incurred in this Court during the remaining days of the trial and during any later appeal. Halifax likewise avoided prejudgment interest costs which would continue to accrue during post-trial motions and any appeal.

As they had a right to do, Travelers, Hartford and Boreal chose to pay substantial attorneys' fees and other costs incurred in this case, to go to trial and to risk the entry of a substantial judgment against them. Having done so, they are hardly entitled to any reduction in the judgment to be entered against them based on Lafarge's settlements with Nationwide and Halifax. Defendants concede that, in a multi-party case, a plaintiff may negotiate a settlement with individual defendants which, cumulatively, may exceed the plaintiff's damages. However, defendants argue that in a contract case a party may not under Texas law recover as damages more than that amount which a factfinder has determined would make it whole. Whether or not this principle applies here, defendants have not shown that, when their attorneys' fees and costs and prejudgment interest on their shares are considered, Nationwide and Halifax have paid more than their allocated shares. To determine whether Nationwide and Halifax have in fact paid more than their allocated shares would require a comparison of the total attorneys' fees and costs which would have been incurred by them in this litigation with the attorneys' fees and costs actually incurred by Travelers, Hartford and Boreal. The amount of prejudgment interest allocated to the Nationwide and Halifax shares would also have to be considered. It is apparent that there is no way that the dollar value of these two prior settlements can be meaningfully correlated with the amount of the judgments to be now entered against the non-settling insurers.

The Court concludes that Travelers, Hartford and Boreal, who chose not to settle, are not entitled to the benefits of Lafarge's settlements with other parties, any more than they would be required to pay additional amounts to Lafarge if Nationwide and Halifax settled for an amount less than their allocable share. Were the Court to accept defendants' arguments, there would be no incentive for Lafarge to settle. As the Supreme Court of Texas said in *Cypress Creek*

---

**5.** Counsel for the insurers assert, *inter alia,* that they need to know the terms of the settlement agreement which relate to Nationwide's agreement to pay a lump sum toward already incurred defense expenses; the amount that Nationwide paid as a lump sum and on what date; the percentage that Nationwide agreed to pay toward future defense costs; and what amount has been paid toward those costs.

**6.** At a pretrial hearing held in this case on May 7, 1992, this Court denied the request of Travelers for discovery of the terms of the settlement agreement between Lafarge and Nationwide, concluding, *inter alia,* that "Lafarge has every right to settle with its primary insurers in an amount exceeding its defense costs." Tr. at 7.

*Util. Serv. Co. v. Muller,* 640 S.W.2d 860, 865 (Tex.1982):

> The plaintiff could only lose by settling. If the plaintiff settled for less than the settling defendants' *pro rata* share of the damages found by the jury, the plaintiff absorbed the loss. If the plaintiff made a settlement for more than the settling defendants' share, the excess benefited only the non-settling defendant.

In its Memorandum and Order entered in this case on September 30, 1992, this Court ruled that each primary insurer had a duty to pay only its apportioned share of the defense expenses. Rejecting Lafarge's argument that joint and several liability existed, the Court thus determined that each primary insurer had a duty to pay only its apportioned share of the defense expenses. Each insurer is thus responsible for its own particular allocated share. Under this ruling of the Court, none of the insurers named as defendants has a right of contribution against any other insurer. For similar reasons, Travelers, Hartford and Boreal are not entitled to seek a credit for any alleged "excess" amounts paid by Nationwide and Halifax by way of settlement. To the extent that Nationwide and Halifax have paid more than the one-sixth and the one twenty-fourth shares allocated to them respectively, such payments have been made as a result of the settlement agreements reached between them and Lafarge, and Lafarge is entitled to retain all of the amounts paid or owed under these agreements.

Since Travelers, Hartford and Boreal are entitled to no reduction in the judgments to be entered against them because of Lafarge's settlements with Nationwide and Halifax, these insurers are not entitled to the discovery sought by them. The insurers have asserted, *inter alia,* that they need to know the date and amount of each payment made by Nationwide to avoid being charged with interest on those amounts paid by Nationwide over and above its one-sixth share. There is no merit to this contention. If Lafarge is entitled to recover interest from defendants Travelers, Hartford and Boreal, such interest must be calculated on the basis of the amounts wrongfully withheld by these insurers. Amounts paid by Nationwide under its settlement agreement have no relevance to these calculations.

Since no reason exists for the production by Lafarge of the confidential settlement agreement between it and Nationwide, the motion of Travelers, Hartford and Boreal to permit limited discovery regarding implementation of the Lafarge–Nationwide settlement agreement will be denied.[7]

V

*Prejudgment Interest—Travelers and Hartford*

In Lafarge's motion to mold the jury verdict, an award of prejudgment interest is sought against Travelers and Hartford. According to Lafarge, defendants Travelers and Hartford owe prejudgment interest under Texas law on the share of the judgment payable by each, calculated at the rate of 10% per year, not compounded. In support of that request, Lafarge has submitted affidavits and computer-generated documents summarizing the amount of prejudgment interest accrued on the various bills paid by the Lafarge entities. In opposing Lafarge's request, defendants Travelers and Hartford assert that equitable considerations require this Court to deny any award of prejudgment interest to Lafarge or, in the alternative, to award an amount less than that claimed by Lafarge.

The parties agree that Texas law is controlling. This Court is therefore bound to follow opinions of the Texas Supreme Court, which is the highest court in Texas which has spoken on questions pertaining to a trial court's award of prejudgment interest to a prevailing plaintiff.

The leading Texas case is *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex.1985). *Cavnar* was a wrongful death action in which the plaintiffs were denied prejudgment interest by Texas lower courts.

---

**7.** In *Lafarge v. Hartford,* the Fifth Circuit affirmed the District Court's denial of Hartford's motion to compel production of this same Lafarge–Nationwide settlement agreement. 61 F.3d at 400–01.

Because there was no enabling statute controlling the award of prejudgment interest in personal injury cases, the Texas Supreme Court examined relevant equitable considerations. *Id.* at 552. The Court first noted that a judgment which awards the plaintiffs only the amount of damages sustained at the time of the incident does not provide full compensation because the plaintiffs were denied the opportunity to invest and earn interest on the amount of damages between the time of the occurrence and the time of judgment. *Id.* The Court therefore held that, as a matter of law, a prevailing plaintiff may recover prejudgment interest on damages that have accrued by the time of judgment. *Id.* at 554.

The basic policies behind the rule adopted by the Court in *Cavnar* were to provide full and fair compensation to plaintiffs, to encourage settlements, and to discourage delay by defendants. *Id.* The Court observed that the prejudgment interest scheme which it had adopted did not create incentives for plaintiffs to delay. *Id.; see also Matthews v. DeSoto,* 721 S.W.2d 286, 287 (Tex.1986) ("Few if any plaintiffs would prefer to have defendants retain their funds in order to increase the amount of interest instead of obtaining the full compensation to which they are entitled as quickly as possible"). Finally, the court in *Cavnar* emphasized that prejudgment interest was not intended to punish the defendant's misbehavior, but merely to compensate the plaintiff for being denied the opportunity to invest and earn interest on the amount of damages. *Id.* at 555.

A year after its decision in *Cavnar,* the Texas Supreme Court further elaborated concerning the law relating to awards of prejudgment interest. In *Matthews v. DeSoto,* 721 S.W.2d 286 (Tex.1986), the Texas Supreme Court had before it a case in which the intermediate appellate court had ruled that a trial court could reduce or eliminate a plaintiff's prejudgment interest award upon a finding that the plaintiff used dilatory tactics in bad faith to prevent resolution of the lawsuit. The Texas Supreme Court rejected this ruling, stating that the approach adopted by it in *Cavnar* "provides the trial court no discretion to lessen or increase the interest

amount for delays caused by either party." *Id.* at 287. The Court in *Matthews* stated that the policies underlying *Cavnar* would not be advanced by giving the trial court discretion in determining the amount of prejudgment interest. *Id.* A penalty for the use of dilatory tactics "would not enhance full and fair compensation because the plaintiff is still deprived of the use of his funds for which he deserves full recompense." *Id.* The Court also noted that trial court discretion with regard to prejudgment interest would further complicate the trial process and would often require a trial within a trial on the issue of the plaintiff's possible dilatory conduct. *Id.* The Court concluded that "an equitable exception to *Cavnar* is not necessary at this time" and rejected the notion that a trial court has the discretion to reduce a plaintiff's prejudgment interest award. *Id.*

Subsequently, the Texas Supreme Court decided *Perry Roofing Co. v. Olcott,* 744 S.W.2d 929 (Tex.1988). In *Perry,* the Court affirmed the lower court's decision to extend *Cavnar* beyond merely personal injury and wrongful death cases and held that the principles of *Cavnar* were likewise applicable to a breach of contract action.

 Applying those principles to the facts of record here, this Court concludes that Lafarge is entitled to recover prejudgment interest from defendant Travelers and from defendant Hartford at the rate of 10% per year, not compounded. The parties have not disputed that 10% is the appropriate percentage under Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 § 2. *See Lafarge v. Hartford,* 61 F.3d at 401–402. Under *Cavnar* and subsequent decisions of the Texas Supreme Court, Lafarge, as the prevailing party, is entitled to recover prejudgment interest against defendants Travelers and Hartford. Under applicable Texas law, this Court has no discretion to deny or reduce an award of prejudgment interest in Lafarge's favor because of equitable considerations.

In opposing any award of prejudgment interest against them, defendants Travelers and Hartford rely on *Concorde Limousines, Inc. v. Moloney Coachbuilders, Inc.,* 835 F.2d 541 (5th Cir.1987) and *Executone Information Sys., Inc. v. Davis,* 26 F.3d 1314 (5th

Cir.1994). These Fifth Circuit cases suggest that a trial court might be justified in denying prejudgment interest if "exceptional circumstances" exist. Travelers and Hartford contend that exceptional circumstances in this case require this Court to deny Lafarge's request for an award of prejudgment interest. On the record here, the Court would disagree.

First, the controlling law is that established by the Texas Supreme Court and not by the Fifth Circuit's interpretation of that Court's decisions. Recent rulings of the Texas Supreme Court have never recognized the existence of "exceptional circumstances" as an exception to the general rule that prejudgment interest must be granted to a prevailing party as a matter of course. Rather, the Texas Supreme Court has flatly held that a trial court does *not* have the discretion to deny prejudgment interest on equitable grounds. *Concorde* itself recognizes that under Texas law "equitable prejudgment interest is awarded as a matter of course...." 835 F.2d at 549.

Second, even were this Court to conclude that it was authorized under Texas law to deny prejudgment interest on the grounds of exceptional circumstances, no such circumstances exist in this case. Defendants rely on certain language of this Court in granting the motions of Travelers and Hartford for judgment as a matter of law as to Lafarge's claims that these insurers each violated their duty of good faith and fair dealing by denying or delaying payment of Lafarge's attorneys' fees and expenses. (Tr. 3272–3280). However, the Court's comments related to quite a different issue from the one presently before it. The Court in that ruling was concerned with whether a reasonable insurer would, under similar circumstances, have delayed or denied benefits to the insured. This Court concluded that unwarranted positions taken by Lafarge were in part responsible for the failure of the defendants to agree at once or later to pay all or part of the defense expenses.

Under *Matthews*, this Court does not have discretion to deny prejudgment interest

based on defendants' claim that plaintiff Lafarge unduly delayed resolution of the dispute. *Matthews*, 721 S.W.2d at 287. Prejudgment interest is not intended to punish misbehavior of a defendant, nor should it be withheld to punish a plaintiff's misbehavior. *Id.* Indeed, the *Concorde* opinion itself quotes directly from *Matthews* that "[a] dilatory penalty would not enhance full and fair compensation because the plaintiff is still deprived of the use of its funds." *Concorde*, 835 F.2d at 549 (*quoting Matthews*, 721 S.W.2d at 287). Accordingly, this Court concludes in any event that the fact that Lafarge may have taken unreasonable or unwarranted positions in its settlement negotiations with the insurers and may have thereby delayed resolution of this case would not constitute such "exceptional circumstances" as to justify denial of an award of prejudgment interest. This is not a case where the Court, even applying Fifth Circuit law, can conclude that equitable concerns justify the denial of prejudgment interest.

Finally, Travelers and Hartford contend that the Court should deny prejudgment interest because of a failure of proof. According to these insurers, Lafarge failed to introduce at the trial evidence of the timing of the various payments made to Lafarge's attorneys and experts. This is a specious argument and will be rejected.[8] It was agreed by the parties during the trial that questions pertaining to an award of prejudgment interest in favor of Lafarge would be presented to and decided by the Court after the jury had returned its verdict. Indeed, without objection, the jury was instructed that the decision as to whether prejudgment interest was recoverable and at what rate would be made by the Court at the time that judgment was entered in this matter. Affidavits and exhibits submitted by Lafarge in support of its motion to mold the jury verdict constitute sufficient evidence for this Court to calculate the amounts of prejudgment interest due and owing by Travelers and Hartford. There was no reason for Lafarge to introduce any of this evidence during the jury trial.

---

8. The contention would appear to be an afterthought. It was not advanced in the initial memorandum of Travelers and Hartford opposing an award of prejudgment interest.

For all these reasons, this Court concludes that Lafarge is entitled to an award of prejudgment interest against both Travelers and Hartford at the requested rate of 10% per annum. A calculation of the amount of the award will be made pursuant to the computer-generated documents which form a part of the record here.

## IV

### Prejudgment Interest—Boreal

■ Lafarge also seeks an award of prejudgment interest against defendant Boreal. Somewhat different considerations apply as to this Canadian insurer.

Province of Quebec and Canadian law is controlling. Boreal agrees that mandatory Quebec law entitles Lafarge to an award of interest which may properly be calculated at the rate of 5% per annum on Boreal's allocated share of the verdict. What is disputed is Lafarge's right to recover an additional 5% under Article 1619 of the Civil Code of Quebec. This so-called "additional indemnity" is not a mandatory award but rather is discretionary. Its purpose is to compensate the plaintiff "for the delay in paying him the primary and principal indemnity" and "[l]ike the legal interest to which it is added, its amount will vary depending on the length of that delay." *Travelers Insurance Company v. Corriveau*, 1982, 2 SCR 866 at 875. Ordinarily, a trial court should order this additional indemnity unless there are reasons why this should not be done. *See Trottier v. The British American Oil Co. Ltd.*, 1977 C.A. 576, 580. However, under Quebec law, additional indemnity may be refused in the discretion of the Court in at least two specific cases, "namely when the plaintiff is responsible for significant delays or when the amount originally claimed · is grossly exaggerated." *Canadian Newspaper Co. Ltd. v. Snyder*, J.E., 95–644 C.A., at 4; *see also Soucie v. Tilden Rent–A–Car Co.*, 1977 C.S. 889 and *Vincent v. Elfassy*, J.E. 87–604 (C.S.). Arguing that Lafarge's claims against it have been grossly exaggerated, Boreal contends that the Court should refuse to award additional indemnity.

On the record here, this Court concludes that under Quebec and Canadian law, Lafarge is entitled to the additional indemnity sought from Boreal. In *Canadian Newspaper*, the Court of Appeals stated (at page 1 of the English translation) that, "it is well established that the awarding of additional indemnity remains the rule and that it cannot be refused except in exceptional circumstances." As discussed hereinabove, the facts here do not constitute exceptional circumstances. This Court cannot conclude on the record here that Lafarge's claims against Boreal were "grossly exaggerated." The jury awarded Lafarge 71% of the total amount sought by Lafarge at the trial. The cases relied upon by Boreal in which an additional indemnity award was denied involved awards of a very small percentage of the total amount claimed. In *Vincent*, the Court awarded 4.5% of the claim and in *Soucie*, the recovery was less than 30% of the claim. In *Canadian Newspaper*, the jury awarded 5.74% and 12.75% of the two claims at issue.

Boreal argues that Lafarge was unreasonable in its settlement demands. However, settlement of Lafarge's claim against Boreal presented difficult problems because of Hartford's subrogation claim whereby it sought indemnity from Lafarge Canada. Lafarge Canada in turn was contending that Boreal's policy covered any such indemnity claim. The subrogation issue was not decided adversely to Hartford until shortly before the trial. Memorandum and Order of October 6, 1995, at 14–25. Because of these and other complexities, this Court concludes that it was not unreasonable for Lafarge to decline to accept Boreal's settlement offers.

For all these reasons, this Court concludes that Lafarge is entitled to an award against Boreal of 5% interest and 5% as additional indemnity, or a total of 10% to be added to the share of the judgment payable by this insurer. Once again, the amount will be calculated pursuant to the computer-generated documents furnished by Lafarge which form a part of the record in this case.

## VII

### Calculations

Pursuant to the rulings made by the Court herein, the judgments to be entered will be calculated as follows:

(a)
Travelers

| | |
|---|---|
| Jury award ..................... | $19,485,000.00 |
| Less adjusted pre-tender expenses | 109,458.02 |
| Total principal.......... | $19,375,541.98 |
| Principal of $19,375,541.98 ÷ 6 = .. | $ 3,229,257.00 |
| Interest at 10% (through 11/26/96) | 1,127,872.33 |
| TOTAL JUDGMENT | $ 4,357,129.33 |

After November 26, 1995, interest accrues at $884.76 per day.

(b)
Hartford

| | |
|---|---|
| Jury award ..................... | $19,485,000.00 |
| Less adjusted pre-tender expenses | 109,458.02 |
| Total principal.......... | $19,375,541.98 |
| Principal of $19,375,541.98 ÷ 12 .... | $ 1,614,628.50 |
| Less 1/12 of $250,000 deductible ... | 20,833.33 |
| | $ 1,593,795.17 |
| Interest at 10% (through 11/26/95) | 553,053.42 |
| TOTAL JUDGMENT | $ 2,146,848.59 |

After November 26, 1995, interest accrues at $436.83 per day.

(c)
Boreal

| | |
|---|---|
| Jury award ..................... | $19,485,000.00 |
| Less adjusted pre-tender expenses | 185,392.15 |
| Total principal.......... | 19,299,607.85 |
| Principal of $19,299,607.85 ÷ 6 ...... | $ 3,216,601.30 |
| Less 1/6 of $500,000 deductible ...... | $ 83,333.33 |
| | $ 3,133,267.97 |
| Interest at 5% and additional indemnity at 5% (through 11/27/95) .... | 1,039,333.27 |
| TOTAL JUDGMENT | $ 4,172,601.24 |

After November 27, 1995, interest accrues at $857.73 per day.

## VIII

For the reasons stated, the motion of the Lafarge plaintiffs to mold the jury verdict will be granted in part and denied in part. Defendants' motion to permit limited discovery will be denied. An appropriate Final Judgment Order will be entered by the Court.