**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 98-21031

_____

GUARANTY NATIONAL
INSURANCE CO.,                                Plaintiff-Appellee,

versus

AZROCK INDUSTRIES INC.,
d/b/a Azrock Commercial Flooring        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

April 27, 2000
<u>ON PETITION FOR REHEARING</u>

(Opinion March 10, 2000, 5th Cir., 2000, ____F.3d____).

Before WIENER and STEWART, Circuit Judges[*]:

WIENER, Circuit Judge:

The petition for rehearing filed by Plaintiff-Appellee Guaranty National Insurance Co.'s ("Guaranty National") is GRANTED, our prior panel opinion is WITHDRAWN, and this opinion is SUBSTITUTED therefor. We AFFIRM IN PART, REVERSE IN PART and REMAND with instructions.

In this diversity case, Defendant-Appellant Azrock Industries Inc. ("Azrock") appeals from the district court's grant of summary

---

[*] District Judge John M. Shaw of the Western District of Louisiana was a member of the panel that heard oral arguments, but because of his death on December 24, 1999, he did not participate in this decision. This case is being decided by a quorum. 28 U.S.C. § 46(d).

1

judgment to Guaranty National.  We must decide what event triggers an insurer's duty to defend its insured against asbestos-related personal injury claims under a Commercial General Liability ("CGL") policy, here, one issued by Guaranty National to Azrock.  For reasons we explain below, we reverse the district court, which applied "manifestation of injury or disease" as the triggering event, and remand with instructions.

I.

Facts and Proceeding

From the 1930s to the early 1980s, Azrock manufactured floor tiles containing asbestos fibers.  Between January 1989 and March 1998, Azrock was sued in at least thirty-three separate actions for personal injuries allegedly caused by exposure to asbestos; and was sued in one case by a governmental entity for property damage from asbestos installation.  Faced with the costs of litigation and the potential for substantial liability, Azrock turned to its liability insurance providers for defense and indemnity.

Azrock had no general liability insurance from 1930 to 1958. From 1958 to 1983, Azrock's primary CGL insurance provider was Employers Casualty Company ("Employers").  Employers became insolvent and was placed in receivership by the state of Texas in 1994.  From 1983 to 1985, Azrock's primary CGL insurance provider was Western Employers Insurance Company ("Western").  Western also became insolvent and was placed in receivership in 1991.  From 1986 to 1991, Azrock's CGL policies were issued by Kemper and Reliance; but those policies contained asbestos exclusion provisions on the

basis of which both insurers denied coverage for the underlying asbestos-related claims.

For the period of July 1, 1985 through June 30, 1986, Azrock's primary CGL coverage was provided by National American Insurance Company of New York ("NAIC"). For that same twelve-months period, Azrock was covered by an umbrella (excess) liability policy issued by Guaranty National, covering personal injury, property damage, and advertising liability. NAIC, as the primary carrier, undertook the defense of Azrock until 1996, when that insurer notified Guaranty National that its policy limit had been exhausted. Subsequently, Azrock formally demanded that Guaranty National, as the umbrella carrier, take over the defense of the lawsuit and indemnify it on any ultimate liabilities.

In response to Azrock's formal demand, Guaranty National assumed the defense of the underlying claims, but, early in 1997, filed this declaratory judgment action in federal district court, seeking to establish that it had no duty to defend Azrock in the underlying lawsuits. Later that year, Guaranty National filed a motion for partial summary judgment grounded on the assertion that it had no duty to defend Azrock. The following March, the district court granted Guaranty National's motion, declaring that as a matter of law it had no duty to defend Azrock in the underlying asbestos claims. In so ruling, the district court applied a "manifestation theory" of triggerage for continuous bodily injury claims. It noted that none of the plaintiffs in the underlying suits had alleged that their illnesses became identifiable during

3

the term of the Guaranty National policy; accordingly, there was no "occurrence" during the coverage period within the meaning of the policy. Therefore, reasoned the district court, Guaranty National had no duty to defend the suits and thus no duty to indemnify Azrock in the underlying claims. Azrock appealed.

## II.

### Analysis

#### A.  Standards of Review

This appeal arises from the grant of summary judgment to Guaranty National. The district court applied Texas law to hold that coverage under the Guaranty National policy was not triggered by any of the underlying lawsuits; thus, as a matter of law, Guaranty National had no duty to defend (and consequently no duty to indemnify) Azrock in those lawsuits. We review the district court's grant of summary judgment de novo.[1] In holding that Guaranty National had no duty to defend the claims against Azrock, the district court determined that the trigger of coverage under a CGL policy for continuous exposure was settled under Texas law and, accordingly, applied the manifestation theory. We review de novo the district court's determinations of state law.[2]

#### B.  Jurisdiction and Choice of Law

Guaranty National filed this federal court declaratory judgment suit in the Southern District of Texas on the basis of

---

[1] New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996).

[2] Salve Regina College v. Russell, 499 U.S. 225, 239 (1991).

**4**

diversity of citizenship: Guaranty National is a Colorado corporation with its principle place of business in Englewood, California; Azrock is a Delaware corporation with its principal place of business in Houston, Texas. Federal district courts sitting in diversity apply the law and the choice of law rules of the forum state.[3] The district court in this case applied Texas law and the parties do not dispute the propriety of that approach; thus, we do not reach the choice of law issue and proceed on the assumption that Texas law applies.[4]

C. Construction of Insurance Policies

In reaching the conclusion that, as a matter of law, Guaranty National had no duty to defend and, accordingly, no duty to indemnify Azrock in various underlying claims for damages resulting from asbestos exposure, the district court examined only the insurance policy and the underlying complaints, applying the so-called "eight-corners" rule. Under this maxim, an insurer's duty to defend is determined by reference to the allegations in the pleadings and the language of the insurance policy only.[5] When courts apply the eight-corners rule, they must liberally interpret the allegations in the pleadings, resolving doubts in favor of the

---

[3] <u>Klaxton v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487 (1941).

[4] <u>See</u> <u>N.K. Parrish, Inc. v. Southwest Beef Indus. Corp.</u>, 638 F.2d 1366, 1370 n.3 (5th Cir. 1981).

[5] <u>American Physicians Ins. Exch. v. Garcia</u>, 876 S.W.2d 842, 848 (Tex. 1994); <u>St. Paul Ins. Co. v. Texas Dept. of Transp.</u>, 999 S.W.2d 881, 884 (Tex. App. 1999).

insured.[6]  Courts may not, however, (1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios which might trigger coverage.[7]

The duty to defend is broader than the duty to indemnify.[8] The duty to indemnify is triggered by the actual facts that establish liability in the underlying lawsuit.[9]

Generally, insurance policies are subject to the same rules of interpretation as other contracts.[10]  If the policy terms are susceptible of only one reasonable construction, they will be enforced as written.[11]  If, however, the policy is susceptible of more than one reasonable interpretation, the court must resolve the uncertainty by adopting the construction that most favors the insured.[12]  This rule of construction is sometimes called contra proferentem.

---

[6] National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997).

[7] St. Paul Ins. Co., 999 S.W.2d at 885 (citing National Union, 939 S.W.2d at 142).

[8] St. Paul Ins. Co. v. Texas Dep't. of Transp., 999 S.W.2d 881, 884 (Tex. App. 1999).

[9] Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 821-22 (Tex. 1997).

[10] Barnett v. Aetna Life Ins. Co., 723 S.W.2d 663, 665 (Tex. 1987).

[11] Puckett v. U.S. Fire Ins. Co., 678 S.W.2d 936, 938 (Tex. 1984).

[12] Barnett, 723 S.W.2d at 667; see also Canutillo Indep. Sch. Dist. v. National Union Ins. Co., 99 F.3d 695, 701 (5th Cir. 1996) (interpreting Texas law); National Union Fire Ins. Co. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991); Glover v. National Ins. Underwriters, 545 S.W.2d 755, 761 (Tex. 1977).

The district court in this case determined that the insurance contract was not ambiguous and purported to interpret the policy language according to its plain meaning. We conclude, however, that the policy provisions, in particular the terms "occurrence" and "bodily injury," are susceptible of more than one reasonable interpretation in the progressive disease context, and are therefore ambiguous as a matter of law. Consequently, Texas law requires that we resolve those ambiguities in favor of Azrock. A cumulative, progressive disease does not fit any of the disease or accident situations that the CGL policy typically covers.[13] Our conclusion that the policy terms are susceptible of more than one reasonable interpretation is amply demonstrated by the fact that federal and state courts have developed at least four distinct interpretations of precisely the same uniform CGL policy language in the context of continuous exposure, latent disease cases.

The Guaranty National policy issued to Azrock provides that the insurance company will "pay on behalf of the insured all sums which the insured shall be legally obligated to pay as ultimate net loss because of (A) Personal Injury, (B) Property Damage, or (C) Advertising Liability caused by an occurrence <u>during the policy period</u>..." (emphasis added). The policy defines "occurrence" as

> an accident, or a happening or event, or a continuous or
> repeated exposure to conditions which unexpectedly or
> unintentionally results in personal injury, property

---

[13] <u>Insurance Co. of N. Amer. v. Forty-Eight Insulations, Inc.</u>, 633 F.2d 1212, 1222 (6th Cir. 1980).

damage or advertising liability.  All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

In defining "personal injury," the policy lists numerous types of injurious events, such as false arrest, wrongful entry, libel, slander, and the like, including "bodily injury."  In contrast, the policy specifically defines "property damage" as

(a) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (b) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

We agree with the district court's construction of the policy to the extent the court determined that "occurrence during the policy period" requires that the actual "injury," not merely the negligent act or omission that causes the injury, must happen during the policy period.  Where we part ways with that court is in defining the relevant "injury."  The district court defined "injury" as the date an asbestos-related condition or disease manifests or becomes identifiable.  In granting summary judgment, the court looked to the date of diagnosis alleged in the underlying complaints and equated "manifestation" with that date.  As the court found no complaints that contained allegations of a date of

diagnosis within the one-year policy period, it held that the duty to defend was not triggered in any of the suits.  By contrast, we define "injury" as the subclinical tissue damage that occurs on inhalation of asbestos fibers.  In remanding this case, we instruct the district court to examine each underlying complaint for allegations of exposure during the policy period, approximated by alleged dates of employment involving work with Azrock's products, to determine whether the duty to defend is triggered.

D.  The Trigger of Coverage

As noted above, these precise policy provisions, or essentially identical versions in earlier uniform CGL policies, have been interpreted by numerous courts in the latent disease context, and four main theories of triggerage of coverage have evolved.  Unfortunately, construction of the exact terms, under different sets of facts, against the backdrop of the contra proferentem doctrine, has resulted in irreconcilable holdings.[14] We briefly identify and define each.

1.  Manifestation Theory:

Here, the district court held that, according to Texas law, coverage in instances of progressive diseases is triggered when the condition "manifests."  According to this theory, the term

---

[14] "The reason for this seemingly anomalous result is that each court considered the case of a different asbestos company which had purchased liability insurance at a different stage in its asbestos product-line development.  Each of the courts, however, subjected the policies to an interpretation designed to 'promote coverage' and to fulfill the 'dominant purpose of [providing indemnification].'" Lac D'Aminate du Quebec, Ltee. v. American Home Assurance Co., 613 F. Supp. 1549, 1557 (D.N.J. 1985).

9

"occurrence" in the CGL policy means the time when the condition, such as asbestosis or lung cancer, becomes clinically evident, identifiable, or diagnosable. The date of "manifestation" is usually equated with the date of diagnosis by a physician or the date a claimant experiences symptoms that impair his sense of well-being.[15]

### 2. Exposure Theory:

Interpreting such policy language under Louisiana law, we have previously held that coverage under a CGL policy is triggered at the time the claimant is initially exposed to the injury-causing agent.[16] Under the exposure theory, "injury" within the meaning of the policy is the subclinical tissue damage that results on inhalation of a toxic substance such as asbestos, even if symptoms or a diagnosable condition have not yet developed.[17] Courts typically approximate the period of exposure by the claimant's period of employment in an asbestos-laden environment.

### 3. Continuous or "Triple" Trigger Theory:

In this appeal, Azrock asks us to hold that coverage is triggered continuously, from the initial exposure to asbestos to

---

[15] See Eagle-Picher Indus., Inc. v. Liberty Mutual Ins. Co., 682 F.2d 12, 19-20 (1st Cir. 1982).

[16] Porter v. American Optical Corp., 641 F.2d 1128, 1142 (5th Cir. 1981) (agreeing with the "reasoning and result" of, and declining to "prolong [an] already lengthy opinion by paraphrasing and rephrasing the Sixth Circuit opinion" in, Forty-Eight Insulations); see also Ducre v. Executive Officers of Halter Marine, Inc., 752 F.2d 976, 993 (5th Cir. 1985) (holding that Porter represents the best Erie guess of Louisiana law and applying exposure theory in silicosis context).

[17] Ducre, 752 F.2d at 993.

the manifestation of a disease. Some courts refer to this theory as the "triple trigger" theory because the policy is triggered by (1) inhalation exposure, (2) "exposure in residence," and (3) manifestation.[18] "Exposure in residence" is the period between the initial injurious exposure and the time when the injury manifests itself, during which period disease development from asbestos fibers lodged in the lung occurs.[19]

A variation on the continuous or "triple" trigger theory is the "double" trigger theory, applied by at least one court.[20] Interpreting an earlier version of the uniform CGL policy that defined "bodily injury" as "bodily injury, sickness, or disease," the Illinois Supreme Court found adequate medical evidence in the record that "bodily injury" in the form of lung tissue damage occurs at the time of exposure, "disease" exists when the condition is manifest or reasonably capable of clinical detection, and "sickness" includes the claimant's disordered, weakened, or unsound state before clinical manifestation.[21] The court did not find, however, that the expert testimony in the record established that asbestos-related disease progressed during the period after exposure but before manifestation, or "disease in residence," and thus declined to hold that the policy was triggered in that

_____

[18] Keene Corp. v. Ins. Co. of N. Amer., 667 F.2d 1034, 1047 (D.C. Cir. 1981).

[19] Id. at 1046.

[20] Zurich Ins. Co. v. Raymark Indus., Inc., 514 N.E.2d 150 (Ill. 1987), aff'ing 494 N.E.2d 634 (Ill. App. 1986).

[21] Id. at 161.

**11**

interim.[22]

### 4. Injury-in-Fact Theory:

The final theory of coverage triggering in continuous exposure cases is the "injury-in-fact" theory, according to which

insurance obligations under the CGL policy arise when real injury occurs during the policy period. Real injury need not have been compensable or diagnosable during the policy period if its existence during that period can be proved in retrospect.... [T]he central issue is when injury _actually_ occurred. Injury need not be manifest, but it must exist in fact.[23]

The challenge in adopting the injury-in-fact approach is that, in each case of an individual suing a manufacturer, a "mini-trial" must be held to determine "at what point the build-up of asbestos in the plaintiff's lungs resulted in the body's defenses being overwhelmed. At that point, asbestosis could truly be said to 'occur.'"[24]

As Texas courts have not squarely addressed the issue of the trigger of coverage in progressive disease cases, we must make an _Erie_ guess on this aspect of Texas law.[25]

---

[22] _Id._ at 160.

[23] _Abex Corp. v. Maryland Cas. Co._, 790 F.2d 119, 124-25 (D.C. Cir. 1986) (relying on _American Home Prods. Corp. v. Liberty Mutual Ins. Co._, 784 F.2d 760 (2d Cir. 1984)).

[24] _Forty-Eight Insulations_, 633 F.2d at 1217.

[25] _See Aetna Cas. and Sur. Co. v. Naran_, 1999 WL 59782, at *4 (Tex. App. Feb. 10, 1999) (noting that "the Texas Supreme Court has never directly addressed the coverage trigger issue"); _Clemtex,_

The district court, in adopting the manifestation theory, relied by analogy on Fifth Circuit and Texas cases involving coverage for non-bodily injury. The court declined to distinguish the property damage context from the personal injury context on the rationale that the policy language itself made no such distinction. Citing three cases involving non-bodily injury from continuous exposure,[26] the district court held that the CGL policy provides coverage for "occurrences" that actually result in "personal injury" during the policy period. We agree that an "injury" must occur during the policy period but disagree with the district court's defining the term "occurrence" as the manifestation of disease.

The district court relied on two prior decisions by this court interpreting Texas law to support the manifestation theory. The first, Snug Harbor, Ltd. v. Zurich Insurance,[27] involved a plaintiff's mishandling of a petition that resulted in a default judgment being entered against the defendant. The defendant then sought to recover from the plaintiff's CGL insurer. We concluded

Inc. v. Southeastern Fidelity Ins. Co., 807 F.2d 1271, 1274-75 (5th Cir. 1987) (noting that Texas courts have not ruled on exposure theory but adopting district court's holding as parties did not challenge it on appeal); Garcia, 876 S.W.2d at 853 n.20 (noting that "Texas has limited precedent" on issue of triggers of coverage but declining to select among the theories as resolution of that question was not necessary to the holding).

[26] American Home Assurance Co. v. Unitramp Ltd., 146 F.3d 311 (5th Cir. 1998); Snug Harbor Ltd. v. Zurich Ins., 968 F.2d 538 (5th Cir. 1992); Dorchester Dev. Corp. v. Safeco Ins. Co., 737 S.W.2d 380 (Tex. App. 1987).

[27] 968 F.2d 538 (5th Cir. 1992).

that there was no "occurrence" during the policy period because, even though the petition was mishandled while the policy was in effect, the entry of the default judgment occurred outside the policy period. We held that an "occurrence" is when the claimant sustains damage -- in Snug Harbor, suffers default judgment -- not when the negligent act or omission causing that damage -- there, improper service -- is committed.

In the second case, American Home Assurance Co. v. Unitramp Ltd.,[28] we noted that Texas courts have held that property damage "occurs" within the meaning of a CGL policy not when the causative negligence occurs but when the damage becomes manifest or identifiable. On the facts of that case, involving damages following delivery of water-contaminated fuel to a vessel, we held that the "occurrence" was not the date the tainted fuel was loaded, but the date the resulting damage became capable of being easily perceived or recognized, such as by chemical testing of the fuel.

The third case relied on by the district court was a Texas Court of Appeals decision, Dorchester Development Corp. v. Safeco Insurance Co.,[29] which involved defective construction work. The state court held that there was no "occurrence" during the policy period; the defective workmanship was performed during that period but the damage to the property that resulted from that work did not become manifest until later.

Guaranty National, in its brief, relies on an unpublished

---

[28] 146 F.3d 311 (5th Cir. 1998).

[29] 737 S.W.2d 380 (Tex. App. 1987).

Texas Court of Appeals decision, <u>Aetna Casualty and Surety Co. v. Naran</u>,[30] which involved a claim for fire damage to a home, garage, and car. The insured property owner asserted that the damage was the result of a continuous process of damage to the car, caused by excessive heat from an improperly installed catalytic converter. Relying on <u>Dorchester</u>, the <u>Naran</u> court held that the damage did not "manifest" during the policy period. The court rejected Naran's arguments for application of either the exposure or injury-in-fact theories of triggerage, <u>distinguishing</u> the personal injury context, in which those theories had been applied previously, from the property damage context: "[Those] cases typically involve claimants suffering from continuous exposure to asbestos and pollutants or toxins causing environmental contamination which cause latent disease or damage and not the type of property damage involved in the present case."[31]

We agree that such a distinction is relevant. Federal district courts applying Texas law in the progressive disease context have distinguished between property damage cases, in which "manifestation" of injury triggers coverage, and bodily injury cases, in which coverage is triggered by exposure or injury-in-fact.[32] As the Sixth Circuit noted: "In a nutshell, the proponents

---

[30] 1999 WL 59782 (Tex. App. Feb. 10, 1999).

[31] <u>Id.</u> at *4.

[32] <u>See</u> <u>Mustang Tractor and Equip. Co. v. Liberty Mut. Ins. Co.</u>, 1993 WL 566032 (S.D. Tex. Oct. 8, 1993) (rejecting manifestation trigger for bodily injury but declining to select between exposure or continuous trigger theories); <u>see also</u> <u>National Standard Ins. Co. v. Continental Ins. Co.</u>, CA3-81-1015-D (N.D. Tex. Oct. 4, 1984)

of the manifestation theory urge that we treat asbestosis the same as any other disease and that we not make any 'special rules' for the cumulative disease situation which asbestos presents. We cannot agree. Cumulative disease cases are different from the ordinary accident or disease situation."[33] Accordingly, we do not find instructive prior opinions of this court or of Texas appellate courts that apply the manifestation theory in entirely different contexts, particularly property damage cases.

Only one federal circuit court has adopted the manifestation trigger for progressive disease cases. The First Circuit, in Eagle-Picher Industries, Inc. v. Liberty Mutual Insurance Co.,[34] relied on the dictionary definition of the term "injury" as "hurt, damage, or loss sustained" to require the condition to be clinically evident or manifest before coverage would be triggered.[35] That court did not find adequate evidence in the record that such "injury" occurred at the time of inhalation of asbestos fibers, because even sub-clinical tissue damage did not occur immediately on inhalation and was reversible in some cases; thus it declined to adopt an exposure theory. In addition, the First Circuit noted that the "public policy underpinning of insurance law," that is, the contra proferentem doctrine, supported the application of the manifestation trigger as Eagle-Picher was uninsured during the

_____

(applying exposure theory).

[33] Forty-Eight Insulations, 633 F.2d at 1219.

[34] 682 F.2d 12 (1st Cir. 1982).

[35] Id. at 19.

**16**

period when most of the injurious exposure took place.[36]  We are not persuaded to apply the dictionary approach on the instant facts.

In granting summary judgment, the district court in the instant case relied on the dates of diagnosis of asbestos, carcinoma, or other conditions alleged by the claimants, as a proxy for the date their harm became "manifest" or "identifiable," and concluded that none of the complaints contained an allegation of a diagnosis during the one-year policy period.  Therefore, reasoned the court, under the eight-corners rule, none of the claims was covered.  We cannot agree with the district court that the meaning of "injury" in the CGL policy is best understood as the date of diagnosis.  To do so would require us to rely on a fiction that suggests a person is "injured" on the date he decides, for whatever reason, to go to the doctor about a condition.  "No doctor would say that asbestosis occurred when it was discovered."[37]  Accordingly, we decline to adopt a version of the manifestation theory that equates "injury" with "diagnosis."  We are constrained, therefore, to reverse the grant of summary judgment on that basis.

As to the one underlying complaint alleging property damage,[38] the district court, however, was correct in applying the manifestation theory to trigger coverage for this property damage claim according to Texas law.  The district court, in granting

---

[36] Id. at 23.

[37] Forty-Eight Insulations, 633 F.2d at 1219.

[38] State v. United States Gypsum Co., No. 98-L-61 (Cook Co. Cir. Ct., filed Feb. 17, 1998).

**17**

summary judgment, determined that the sole property damage claim did not allege manifest, identifiable damage to property between July 1, 1985 and June 30, 1986, sufficient to trigger the duty to defend against that particular complaint.  We affirm that portion of the court's decision.

Having rejected the manifestation trigger, we next must decide which other theory of triggerage should be applied to the remaining personal injury claims to determine whether the duty to defend is triggered.  In applying the eight-corners rule, the district court dismissed the case on the strength of the pleadings and the policy only, holding that none of the underlying complaints alleged a covered claim.

Azrock urges us to adopt the so-called continuous or "triple" trigger, asserting that it is a reasonable interpretation of the policy language and that under the contra proferentem doctrine we should defer to the interpretation they propose.  The obvious advantage of the triple-trigger theory to an insured is that it maximizes coverage and requires little or no individual proof of injury.  Under this theory, the duty to defend is triggered if the plaintiff has alleged that he was exposed, was diagnosed or developed identifiable symptoms, or has yet to develop an identifiable condition as a result of exposure at an earlier time. Under this theory, Guaranty National would be required to defend Azrock in each of the underlying claims.

We acknowledge that Texas law requires us to construe ambiguous policy terms in favor of the insured, but we are not

**18**

required blindly to adopt the interpretation proffered by the insured, especially if we perceive such an interpretation to be an unreasonable construction of the policy terms or to be unsupported in law. To adopt the continuous trigger approach, we would have to interpret the term "bodily injury" in the policy as encompassing three distinct events: (1) inhalation exposure, (2) exposure in residence, and (3) manifestation or diagnosis.

We decline to adopt the continuous trigger theory as the best Erie guess of what the highest Texas court would do if squarely faced with this issue. No Texas court has ever adopted or implicitly endorsed the continuous trigger theory. The three federal district court opinions construing Texas law and applying the continuous trigger theory to which Azrock directs us are of limited precedential value to our decision. In Mustang Tractor & Equipment Co. v. Liberty Mutual Insurance Co.,[39] an unpublished decision from the Southern District of Texas, the court rejected the manifestation theory but declined to decide between the continuous trigger and exposure theories. In Dayton Independent School District v. National Gypsum Co.,[40] a decision from the Eastern District of Texas, the court adopted the continuous trigger theory, but the opinion was vacated on appeal on the grounds that the plaintiffs lacked standing. The Dayton court relied on

---

[39] 1993 WL 566032 (S.D. Tex. Oct. 3, 1993).

[40] 682 F. Supp. 1403 (E.D. Tex. 1988), rev'd sub nom. W.R. Grace & Co. v. Continental Cas. Co., 896 F.2d 865 (5th Cir. 1990).

<u>National Standard Ins. Co. v. Continental Ins. Co.</u>,[41] an unpublished decision from the Northern District of Texas which held that the insurer had a duty to defend the insured in all cases alleging exposure to various chemicals "from the date of initial exposure to such chemicals to the date of manifestation of disease."[42] Again, though, we owe no deference to federal district court's interpretation of state law.[43]

Azrock has not presented adequate support for its proffered theory to convince us that if a Texas court were faced squarely with the issue of the trigger of coverage in the progressive disease context, it would adopt the continuous trigger theory. We therefore decline to do so for Texas.

In arguing that we should reject the manifestation theory applied by the district court, however, Azrock correctly observes that we have twice adopted the "exposure" theory of triggerage when making an <u>Erie</u> guess on Louisiana law. <u>Porter v. American Optical Corp.</u>,[44] like the instant case, involved asbestos litigation against the manufacturer of an asbestos-containing product. That case was tried before a jury and the record contained extensive medical evidence about the progressive nature of asbestos-related diseases. On the basis of that evidence, we noted: "Due to this progressive

---

[41] 1984 WL 23448 (N.D. Tex., April 9, 1984).

[42] <u>Id.</u> at *2.

[43] <u>Salve Regina College</u>, 499 U.S. at 237 ("When de novo review is compelled, no amount of deference is acceptable.").

[44] 641 F.2d 1128 (5th Cir. 1981).

nature, it is generally quite difficult, if not impossible, to assign manifestation of the disease to a specific date."[45] We reversed the district court's application of the manifestation theory and adopted the exposure theory. In so doing we first analyzed the language of the CGL policy, in particular the term "bodily injury," defined as "bodily injury, sickness, or disease" and determined that the district court, in adopting the manifestation trigger, improperly equated "bodily injury" with "sickness" or "disease." Second, we noted that after the district court decided the case, the Sixth Circuit decided Forty-Eight Insulations, rejecting the manifestation theory and accepting the exposure theory. We incorporated by reference the reasoning and result of the Sixth Circuit opinion in toto, without any discussion of features that might distinguish Louisiana law from the substantially similar Illinois and New Jersey laws that were applied in that case.[46]

We reaffirmed Porter and the application of the exposure theory under Louisiana law in Ducre v. Executive Officers of Halter Marine, Inc., a silicosis case.[47] In Ducre, we reversed the district court's holding that had distinguished Porter and applied the injury-in-fact approach to trigger coverage for real but undiscovered injuries that nevertheless could be proven in

---

[45] Id. at 1133.

[46] Id. at 1145.

[47] 752 F.2d 976 (5th Cir. 1985).

**21**

retrospect.[48] In rejecting the <u>Ducre</u> district court's attempt to distinguish <u>Porter</u>, we noted that both cases involved interpretation of the same policy language, especially the critical term "occurrence" and the limit on liability to personal injury sustained during the policy period. We also rejected an argument by one of the parties that the "trend" in Louisiana law was towards adoption of the manifestation theory.

The third of our cases that implicitly raised the trigger of coverage issue for progressive disease cases was governed by Texas law.[49] The district court, in <u>Clemtex, Inc. v. Southeastern Fidelity Ins. Co.</u>, observed that Texas courts had not ruled on the issue and concluded that Texas would apply the exposure theory, as enunciated in <u>Forty-Eight Insulations</u>.[50] The parties did not dispute that determination on appeal and thus we never reached that issue but adopted the district court's conclusion to the extent necessary to decide the remaining issues before us.

We are not persuaded by any cases from Texas courts or from federal cases construing Texas law that there is any defensible reason to apply a different trigger of coverage theory for cases governed by Texas law than we have previously adopted in construing Louisiana law. The <u>Forty-Eight Insulations</u> court itself noted that the choice of law issue mattered only to the extent that both New

---

[48] <u>Id.</u> at 992 (citing <u>American Home Prod. Corp. v. Liberty Mutual Ins. Co.</u>, 565 F. Supp. 1485, 1497 (S.D.N.Y. 1983), <u>aff'd as modified</u>, 748 F.2d 760 (2d Cir. 1984)).

[49] 807 F.2d 1271 (5th Cir. 1987).

[50] <u>Id.</u> at 1274-75.

Jersey and Illinois, like Texas, require construction of ambiguities in favor of the insured; and, as for whether the policy terms were ambiguous, the court noted that the CGL policy terms were standardized and thus did not implicate state-specific law questions. In like manner, we find no basis for distinguishing between Louisiana and Texas law for purposes of construing the CGL policy and thus are persuaded, even though not bound, by our prior holding in Porter.

We further note that on the facts of this case, application of the exposure theory will likely trigger the duty to defend, based on the eight-corners rule, in a number of the underlying claims. Thus, our holding comports with the requirement under Texas law to construe ambiguities in favor of coverage. By contrast, the district court's application of the manifestation theory relieved Guaranty National of the duty to defend in every one of the underlying claims.

For the purposes of determining an insurer's duty to defend its insured in claims alleging personal injury from continuous exposure to asbestos products, the district court on remand need only examine the face of the underlying complaints in light of our holding today regarding interpretation of the CGL policy language. To trigger Guaranty National's duty to defend, the pleading must allege (1) exposure to Azrock's asbestos-containing products during the policy period and (2) that such exposure caused bodily injury -- even if the particular asbestos-related disease was not diagnosed until sometime after the policy expired. The decision we

announce today is premised on our general understanding of the progressive nature of asbestos-related diseases;[51] indeed, the genesis of the instant dispute and the plethora of asbestos-related insurance cases we have discussed, is the proper construction of insurance policy provisions that were not drafted with that unique disease process in mind. To the extent that the parties challenge that general premise on the basis of the particular type of asbestos product or fiber involved, its effect on an individual plaintiffs, or other grounds, those factual disputes are relevant not to the duty to defend – determined under the eight-corners doctrine – but perhaps to the duty to indemnify or as a causation defense to the underlying liability suits.[52]

We remand with instructions for the district court to examine closely the underlying pleadings to determine which complaints allege exposure to Azrock's asbestos products between July 1, 1985 and June 30, 1986. Our cursory review of the pleadings included in the record on appeal suggests that some of the complaints clearly allege relevant employment in asbestos tile installation or related

---

[51] See Borel v. Fiberboard Paper Prods. Corp., 493 F.2d 1076, 1083 (5th Cir. 1973); see also Porter, 641 F.2d at 1132-33; Forty-Eight Insulations, 633 F.2d at 1214 (noting that "there is universal agreement that excessive inhalation of asbestos can and does result in disease"). This statement should not be construed as our taking judicial notice of the "fact" that asbestos causes disease for purposes of subsequent litigation in this or other cases. See Hardy v. Johns-Manville Sales Corp., 681 F.2d 334, 347-48 (5th Cir. 1982).

[52] Cf. Ducre, 752 F.2d at 994 (noting importance of medical evidence in Porter and Forty-Eight Insulations and suggesting that parties have opportunity to develop such evidence in the underlying liability suits); Porter, 641 F.2d at 1132-33.

work during the policy period as well as causation; those complaints would trigger the duty to defend. Others clearly allege employment (_ergo_ exposure) that ended prior to the policy period; Guaranty National would have no duty to defend those complaints. And still others do not allege a period of exposure or relevant employment at all. Again, Texas law instructs us that in applying the eight-corners rule, a court must resolve doubts in favor of the insured but may not read facts into the pleadings, may not look outside the pleadings, and may not merely imagine fact patterns that might trigger coverage. Therefore, for complaints lacking an allegation of exposure, the district court on remand should not impose a duty to defend on Guaranty National.

As we are put to "the always-dangerous undertaking"[53] of making an _Erie_ guess, we take comfort in selecting a trigger of coverage theory that employs a relatively clearly defined, easily ascertainable trigger which will not impose an undue fact-finding burden on busy district courts. We concede the attraction of the intellectual honesty of the injury-in-fact approach, which is arguably the truest to the CGL policy language of "bodily injury" (not relying, as a proxy for "real injury," on either diagnosis or subclinical tissue damage, which according to some scientific evidence, might not develop into a full-blown "disease" in every case). We nevertheless agree with the reasoning of the _Forty-Eight Insulations_ court that a significant problem with the injury-in-

---

[53] _Stephens v. State Farm Mutual Auto. Ins. Co._, 508 F.2d 1363, 1366 (5th Cir. 1975).

**25**

fact trigger is that "[i]f medical testimony as to asbestosis' origin would have to be taken in each of the thousands of asbestosis cases, the cost of litigation would be prohibitive."[54] In addition, the catharsis of resolving this case had made us acutely aware of the morass of theories, distinctions, and commentaries generated by the issue of triggerage of coverage in continuous exposure cases. In a conscious effort to avoid adding to the confusion and increasing the number of irreconcilable holdings from different courts by attempting to refine any of the four less-than-ideal theories, we adopt the same theory for Texas that we have applied in Louisiana, thereby at least maintaining a consistent doctrine in this Circuit.

In sum, our best <u>Erie</u> guess as to what Texas would choose as the event that triggers the insurer's duty to defend in asbestos personal injury cases under a uniform CGL policy is the exposure theory. Designating that as the appropriate trigger, we remand this case to the district court for (1) the court to examine the pleadings in each personal injury suit to determine which ones, if any, allege (a) exposure to Azrock's asbestos-containing products during that period and (b) bodily injury caused by that exposure, and (2) further proceedings consistent with this opinion, including briefing and determination on apportionment of coverage, if any,[55]

---

[54] 633 F.2d at 1218.

[55] <u>Texas Prop. and Cas. Ins. Guar. Assoc. v. Southwest Aggregates, Inc.</u>, 982 S.W.2d 600,604-05 (Tex. App. 1998) (holding that, under eight-corners rule, Texas law does not require pro rata allocation of costs of defense).

and the duty to indemnify, issues not ripe for determination by or adequately briefed for this court.  We affirm the court's grant of summary judgment on the single property damage claim.

One final point:  The district court not only held that, as a matter of law, Guaranty National owed Azrock no duty to defend it on any of the underlying claims, but also held that, as a matter of law, there could be no duty to indemnify.  As we presume that Guaranty National might well be found to have a duty to defend Azrock in at least some of the underlying lawsuits, it thus might be found to have a duty to indemnify as well.  Although the duty to defend is based on the allegations in the complaints, the duty to indemnify must be determined on the actual facts as established at trial.  Accordingly, we also reverse the district court's ruling that Guaranty National has no duty to indemnify in any of the underlying suits, and we remand that issue as well for further determination consistent with this opinion.

## III.

### Conclusion

We reverse the district court's application of the manifestation trigger of coverage (except as to the single property damage case) and reverse its holding that, as a matter of law, based on the allegations in the underlying pleadings, Guaranty National had no duty to defend Azrock in any of those suits.  We also reverse the district court's holding that, as a matter of law,

**27**

Guaranty National had no duty to indemnify Azrock in any of those cases.  We therefore remand this case to the district court for examination of the pleadings to determine whether the duty to defend is triggered under the exposure theory and other legal determinations and proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART and REMANDED with instructions.