NO. 07-02-0399-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 10, 2003

_____

ALLSTATE INSURANCE COMPANY, APPELLANT

V.

ALVIN F. HICKS, APPELLEE

_____

FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;

NO. 51,836-C; HONORABLE PATRICK PIRTLE, JUDGE

_____

Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

**OPINION**

Allstate Texas Lloyds (Allstate) brings this appeal from a final summary judgment declaring it contractually obligated to pay the defense costs of its insured, appellee Alvin Hicks (Hicks), in an action brought against him by the buyers of Hicks' former residence. We will reverse the judgment of the trial court, and render judgment in favor of Allstate.

Factual and Procedural Background

In 1991 Hicks contracted with a general contractor to custom-build a residence on a lot on Tripp Street in Amarillo. The contractor, with the aid of several subcontractors, completed construction of the residence in March 1992, when Hicks occupied it as his home. During construction, pursuant to his agreement with the general contractor, Hicks provided some of the construction materials, including the fill dirt and the concrete.

Hicks undertook to sell the house in 1996. In March he completed a written disclosure document stating the condition of the house pursuant to Section 5.008 of the Property Code (Vernon Supp. 2003). In September this document was given to prospective purchasers Michael and Lynnette Dudding (Duddings), and a sales contract was executed. Hicks' sale of the house to the Duddings was closed on December 10, 1996.

The Duddings subsequently alleged the house contained defects not disclosed by Hicks. In November 1997, they obtained an engineering report detailing defects in design and construction of the house. The next month, Mr. and Mrs. Dudding filed suit against Hicks. The Duddings' claims against Hicks included breach of contract, fraud, misrepresentation and deceit, violation of the Deceptive Trade Practices - Consumer Protection Act, negligence and negligent misrepresentation. They alleged that Hicks had concealed defects such as cracks in the walls, had intentionally failed to disclose defects in appliances, and had engaged in other misrepresentations, all of which caused the

Duddings to buy a residence they would not otherwise have bought. Hicks denied the allegations and defended against them.

By later pleadings, Hicks' real estate agent, the general contractor and several subcontractors were made defendants and third-party defendants. The Duddings also later alleged that the construction materials provided by Hicks were substandard and a "cause of latent construction defects," and that his actions so intruded into the construction process as to make Hicks a "joint builder" of the house.

In the Duddings' third amended petition, filed in March 2000, they for the first time added claims for property damage and personal injury resulting from exposure to mold,[1] which they alleged had developed in the house as a result of defects in the plumbing. They also added their three children as plaintiffs. Their fourth amended petition, filed in May 2000, elaborated on the personal injury claims.

On the Duddings' filing of their third amended petition, and again on their filing of their fourth amended petition, Hicks tendered defense of the claims against him to Allstate under the liability coverage in his homeowners insurance policy in effect at the time of his sale of the house to the Duddings.[2] Allstate denied that the policy covered the Duddings'

---

[1]The Duddings' petition used several terms to refer to the contaminants present in the residence that they alleged caused their personal injuries, including "fungi, mold and bacteria," "toxic microorganisms," "toxic molds/fungi," "harmful microorganisms," "harmful by-products of such organisms," and "toxic microorganisms in the form of mold." We will use the term "mold" for all of them.

[2]Hicks' Allstate renewal policy in the record before us had an effective date of March 4, 1996, and an expiration date of March 4, 1997. The record does not reflect whether, following the closing of the sale of the home, Hicks cancelled the policy before its stated

3

claims and, in July 2000, filed a petition seeking a judicial declaration that it owed Hicks neither a duty to defend nor a duty to indemnify him with respect to them. Hicks' answer to Allstate's petition included a counterclaim for a declaration that the claims were covered, as well as counterclaims for damages.

In September 2000, Hicks moved for partial summary judgment on his counterclaim for a declaration that Allstate owed him the duty to defend him against the Duddings' claims. Allstate filed a response combined with its own motion for summary judgment on the duty to defend issue. The trial court granted Hicks' motion for partial summary judgment and denied Allstate's motion. The court severed the issue from Hicks' damage claims against Allstate, making the partial summary judgment final and appealable. Allstate timely perfected appeal, presenting two issues for our consideration, whether the trial court erred in granting Hicks' motion for summary judgment and whether it erred in denying Allstate's motion.

## Standard of Review

The standards we must apply in reviewing a summary judgment are well established. Tex. R. Civ. Proc. 166a. A movant has the burden of showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. We take evidence favorable to the non-movant as true, and indulge every

---

expiration date. None of the conclusions we reach in this opinion depend on whether the policy period expired on March 4, 1997, or before that date.

4

reasonable inference in favor of the non-movant. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the appellate court reviews the summary judgment evidence of both parties, determines all questions presented, and renders the judgment that the trial court should have rendered. *See Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex. 1999); *Russell v. Panhandle Producing Co.*, 975 S.W.2d 702, 708 (Tex.App.–Amarillo 1998, no pet.). Where, as here, the order granting summary judgment does not specify the grounds on which the trial court relied for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567 (Tex. 1989).

Duty to Defend

If a petition does not allege facts within the scope of coverage, an insurer under a liability policy is not required to defend a suit against its insured. *National Union Fire Ins. Co. v. Merchants Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997). To determine an insurer's duty to defend, we apply the "eight-corners" rule, comparing the factual allegations in the pleadings with the language of the insurance policy. *Id.* In applying that rule, the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged, give a liberal interpretation to the allegations in the petition and resolve doubts in favor of coverage. *Id.* However, the court may not read facts into the pleadings, may not look outside the pleadings, and may not "imagine factual

5

scenarios which might trigger coverage." *Id. at 142; St. Paul Ins. Co. v. Texas Dept. of Transp.*, 999 S.W.2d 881, 885 (Tex.App.--Austin 1999, pet. denied). An insurer's duty to defend arises if the factual allegations against the insured, when fairly and reasonably construed, state a cause of action potentially covered by the policy. *National Union*, 939 S.W.2d at 141. A duty to defend any of the claims against an insured requires the insurer to defend the entire suit. *Stumph v. Dallas Fire Ins. Co.*, 34 S.W.3d 722, 728 (Tex.App.--Austin 2000, no pet.).

Policy Provisions

Hicks' Allstate policy contained the following definitions:

"**Occurrence**" means an accident, including exposure to conditions, which

results in bodily injury or property damage during the policy period.

"**Bodily injury**" means bodily harm, sickness or disease.

"**Property damage**" means injury to, destruction of, or loss of use of

property.

The liability coverage section of the policy contained the following language:

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, [Allstate] will . . . provide a defense at [its] expense by counsel of [its] choice even if the suit is groundless, false or fraudulent.

6

Ambiguity of Term "occurrence" in Policy

We initially address Hicks' contention that the term "occurrence" as used in the policy is patently ambiguous, and must therefore be construed to provide coverage. Insurance policies are contracts. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987). Whether a contractual term is ambiguous is a question of law. *Columbia Gas Trans. Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). A contract is not ambiguous if it can be given a definite meaning as a matter of law. *Id*.

Hicks' argues that the differing constructions given the term "occurrence" by Texas courts in occurrence liability insurance policies demonstrate that the term is ambiguous. As examples Hicks cites the discussion in *American Physicians Ins. Exchange v. Garcia*, 876 S.W.2d 842, 853, n.20 (Tex. 1994), regarding different coverage-triggering rules applied by courts in other jurisdictions, and compares results reached in *Dorchester Development Corp. v. Safeco Ins. Co.*, 737 S.W.2d 380 (Tex.App.–Dallas 1993, no writ), *Cullen/Frost Bank of Dallas v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252 (Tex.App.–Dallas 1993, no writ.), and *Pilgrim Enterprises, Inc. v. Maryland Cas. Co.*, 24 S.W.3d 488, 495 (Tex.App.--Houston [1st Dist.] 2000, no pet.).

Hicks' argument is not persuasive. As the cases he cites demonstrate, the term "occurrence" is typically a defined term in liability insurance policies. *See Cullen/Frost Bank*, 852 S.W.2d at 257. *But see State Farm Lloyds, v. Williams*, 960 S.W.2d 781, 782 (Tex.App.–Dallas 1997, writ denied) (term not defined in homeowners policy). Although there are similarities in the definitions of the term contained in the policies at issue in the

7

cases Hicks cites, they are not identical. That the term is given differing constructions in different cases involving different policies is not surprising, and does not demonstrate that the term is ambiguous in the particular policy at issue here.

## Application of Eight-Corners Rule

In his motion for partial summary judgment and in his brief on appeal, Hicks lists six factual allegations from the Duddings' pleadings that he contends give rise to Allstate's duty to defend him. Summarized, those allegations are: (1) that on or about February 15, 2000, the Duddings determined for the first time that the residence was contaminated with mold; (2) the existence and growth of the mold was a direct result of the introduction of water within and under the house from a cracked sewer pipe and other causes that were present during the policy period; (3) the Duddings suffered health problems and injury to their "physical and mental well being" from their exposure to the mold; (4) the Duddings were present on the premises before the closing and could then have been exposed to the mold; (5) Hicks was guilty of negligence and not simply wrongful intentional conduct; and (6) the Duddings suffered property damage, including both injury to and loss of use of property.

Allstate asserts that the Duddings did not allege bodily injury or property damage caused by an occurrence. This is so, Allstate argues, because the origin of the damages alleged by the Duddings was not an accident, but was Hicks' intentional misrepresentations made in connection with the sale of the residence. In response to Hicks' argument that the Duddings' amended pleadings alleged injury and damage from Hicks' negligence and not

8

only from his intentional conduct, Allstate argues that a plaintiff's factual allegations control, not the label placed on the cause of action, and that the Duddings' mere allegation of a negligence cause of action was not sufficient to create a duty to defend Hicks. Allstate further argues that the policy's intentional injury exclusion precludes coverage.

Because Hicks takes the position that the claims added by the Duddings' third and fourth amended petitions against him are of a different nature from those asserted in their previous pleadings, alleging bodily injury and property damage from exposure to conditions, within the definition of occurrence in the policy, we first address his arguments concerning those allegations.

In his motion for partial summary judgment, Hicks argued the Duddings sought recovery for bodily injury and property damage, as those terms are defined in the policy, and the facts on which those claims were based were "occurrences" under the policy. For purposes of analysis of Hicks' argument, we will assume that the Duddings' allegation that they had suffered medical problems as a result of exposure to mold is an allegation of bodily injury as that term is defined in the policy, and that the allegations the Duddings lost use of the house due to the presence of mold meet the policy's definition of "property damage." The predicate questions are whether the bodily injury and property damage were the result of occurrences as defined under the policy. To be the result of an occurrence, as defined in the policy, the injury or damage must result during the policy period. Our specific inquiry, then, is whether the bodily injury and property damage alleged occurred during the policy period.

For our purpose of addressing the Duddings' claims, it is important to note that the policy period with which we are concerned is quite short, extending, under the reading of the record most favorable to Hicks, from December 9, 1996 (the day before the closing of Hicks' sale of the residence to the Duddings) through 12:01 a.m. on March 4, 1997.

A. *Claims of Bodily Injury from Exposure to Mold*

The Duddings' petition alleges that they "determined" on or about February 15, 2000, that the residence was contaminated with mold. The petition further states that the Duddings had occupied the residence since December 1996, "totally unaware" of the mold contamination, but that their exposure to mold in the residence caused them personal injuries including headaches, respiratory distress and neurological impairment. Hicks argues that these are claims of bodily injury resulting from the Duddings' exposure to conditions, and thus are claims resulting from an occurrence, obligating Allstate to provide a defense. To meet the policy definition's requirement that the occurrence result in bodily injury during the policy period, Hicks makes a two-step argument: first, he urges that we apply here the holding of *Pilgrim Enterprises,* 24 S.W.3d 488, in which the court construed the definitions of "occurrence" in comprehensive general liability policies; and, secondly, he argues that, under the allegations in the petition, the Duddings could have been exposed to mold during the policy period.

In *Pilgrim Enterprises*, the insured, Pilgrim, operated dry-cleaning businesses and sought coverage for claims against it by landlords and others alleging property damage from contamination by perchloroethylene, a chemical used by Pilgrim, and personal injury

10

from exposure to the same chemical. *Id.* at 490-91. The policies at issue defined bodily injury and property damage as that "which occurs during the policy period." *Id.* at 494. Maryland, the insurer, relied on that language as support for its position that any injury must manifest itself during the policy period. *Id.* at 495. On appeal of the trial court's summary judgment in favor of Maryland, the court cited the various "manifestation" rules by other jurisdictions discussed in *American Physicians Ins. Exchange*, 876 S.W.2d at 853. It then reviewed the approaches taken by Texas courts considering the issue under commercial general liability policies, and concluded that the issue when injury and damage occur was "far from settled." 24 S.W.3d at 496. The court held that, for purposes of resolving the duty to defend, and under the policies' definition of occurrence, both personal injury and property damage caused by exposure to the chemicals occurred at the time of the exposure, not at the later time the injury or damage became manifest. 24 S.W.3d at 498.

Other courts have concluded that injury or damage occurs under an occurrence liability policy when it becomes manifest. In *Dorchester Development*, 737 S.W.2d at 383, the Dallas Court of Appeals applied a "manifestation" rule in a property damage case. The same court applied that holding in another property damage case, *Cullen/Frost Bank*, 852 S.W.2d at 257.

Resolution of this case, though, does not require us to decide whether the "exposure" or "manifestation" rule is applicable here under the Allstate policy. Even were we to adopt the approach taken in *Pilgrim Enterprises* and hold that exposure to mold

11

during the policy period constituted bodily injury under the policy,[3] we would not be able to agree with Hicks because we cannot accept the second step of his two-step argument. We do not read the Duddings' petition as alleging that they were exposed to mold during the policy period.

The Duddings' petition did not allege when their bodily injuries (defined in the policy, recall, as "bodily harm, sickness or disease") from mold manifested themselves. As noted, the petition alleged that the Duddings suffered injuries as a result of their exposure to mold, and alleged that they did not "determine" the residence was contaminated with mold until February 2000.

The single factual allegation from the Duddings' 41-page fourth amended petition to which Hicks points in support of his contention that the Duddings alleged exposure to mold during the policy period is the allegation that one of the family members, the husband Mike Dudding, was present in the basement of the residence, where there was water damage, on the day before the closing. The petition did not allege that mold was then present. Further, there was no suggestion in the Dudding petition that any bodily injury suffered by Mike Dudding on that occasion would be contagious, so that allegation cannot in any sense be read as an assertion of exposure (and thus injury, under Hicks' theory) to

---

[3]The opinion in *Pilgrim Enterprises* cites *Guaranty National Ins. Co. v. Azrock Industries Inc.*, 211 F.3d 239 (5th Cir. 2000), in which the Fifth Circuit predicted that Texas courts would consider the injury in the case of exposure to asbestos as being "the subclinical tissue damage that occurs on inhalation of asbestos fibers." 211 F.3d at 244. We have nothing in the record before us to indicate that exposure to mold creates the type of slow-developing "progressive disease" on which the exposure-based test of injury in *Azrock* is premised.

the other Dudding family members.[4] Even under a liberal reading of it, that paragraph cannot fairly be said to allege that the Duddings suffered bodily injury by exposure to mold on that occasion. Hicks' attempt to link the allegation that Mike Dudding was present in the basement of the house on the day before closing to the Duddings' claims of bodily injury seeks to have us read facts into the pleadings and "imagine factual scenarios which might trigger coverage," but were never alleged in the petition, in violation of the admonitions in *National Union,* 939 S.W.2d at 142, and *St. Paul Insurance*, 999 S.W.2d at 885.

The Duddings' allegations of bodily injury from exposure to mold are to be distinguished from the allegations made in *Pilgrim Enterprises* and *Azrock*. In those cases, the plaintiffs alleged exposure to the injury-causing contaminant during the policy period. In *Pilgrim Enterprises*, the plaintiffs alleged exposure to perchloroethylene during the time the business was operated and insured by *Maryland Casualty*, 24 S.W.3d at 494, and in *Azrock*, the plaintiffs alleged exposure to asbestos while they were employed in the processing of asbestos products. 211 F.3d at 251. Here, by contrast, the Duddings

---

[4]Paragraph 4.12 of the Duddings' fourth amended petition reads as follows:

The day before the December 10, 1996, closing, Defendant Hicks showed Plaintiff Mike Dudding damage in the basement resulting from a water leak(s) most likely from the plumbing system. Defendant Hicks assured Mike Dudding that he would fix the problem and resulting damage. Based on his representation, the Duddings closed the sale of the house the next day under duress since their family had no other options as they had already sold their house prior to this sale. Hicks did not fix the water leak and resulting damage. Since that time, the basement has flooded at least five additional times as a result of failure of the plumbing system and caused extensive water damage to the basement and surrounding area.

13

alleged that mold grew in the residence because of moist conditions.[5] But they did not allege that the residence was contaminated with mold when they bought it, nor did they allege when the mold formed. Based on the single allegation to which Hicks can direct us, it is unreasonable to conclude that their petition alleged exposure to mold during the short policy period in question here. We find that the Duddings did not allege that they suffered bodily injuries during the policy period, and that the injuries they alleged, even if caused by Hicks' negligence, were therefore not alleged to be the result of an occurrence under the Allstate policy.

### B. *Claims of Property Damage from Exposure to Mold*

The Duddings' petition alleges they learned of the mold contamination in February 2000 and lost use of the house after that time, some three years after the end of Hicks' policy period.[6] Hicks cites *Federated Mutual Ins. Co. v. Concrete Units, Inc.*, 363 N.W.2d

---

[5]For example, paragraph 4.20 of the Duddings' fourth amended petition reads as follows:

> On or about February 15, 2000, the Plaintiffs determined that the Residence is contaminated with high levels of harmful, toxic microorganisms in the form of mold/fungi. The existence and growth of such microorganisms is, to the knowledge of Plaintiffs, a direct result of introduction of water directly into and under the Residence from a cracked sewer pipe, multiple plumbing leaks and improper site drainage. The Dudding family has lived at 7701 Tripp since December, 1996 completely unaware of the toxic microorganisms described above. The house is replete with fungi, mold and bacteria. Plaintiffs have extensive health problems because of exposure to this condition. Because of these problems and the presence of the toxic microorganisms Plaintiffs were advised by air quality experts to vacate the Residence immediately. The Residence is uninhabitable.

[6]The  petition also contains this sentence: "Additionally, certain personal property owned and/or possessed by Plaintiffs has become contaminated by such organisms and,

751, 757 (Minn. 1985), and this court's unpublished opinion in *Travelers Indemnity Co. v. Page & Associates Construction*, No. 07-97-338-CV (Tex.App.–Amarillo 1998, pet. denied), for the proposition that loss of use after a policy period will not preclude coverage. But the policies at issue in those cases defined property damage to include "physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time [.]" As noted, under the policy issued to Hicks, property damage resulted from an "occurrence" only if the damage or loss of use was during the policy period. The Duddings' petition does not claim a loss of use during the policy period, and therefore does not claim property damage resulting from an occurrence under the policy.

## C. *Claims Other than Mold Exposure Claims*

Hicks does not argue that the Duddings' assertions of property damage arising from his alleged misrepresentations and failures to disclose entitle him to a defense of their suit. We agree with Allstate that any such claims do not give rise to a duty to defend under the policy because such misrepresentations and failures are not accidents, and any resulting damage was thus not the result of an occurrence. *See Freedman v. Cigna Ins. Co.*, 976 S.W.2d 776 (Tex.App.–Houston [1st Dist.] 1998, no pet.); *State Farm Lloyds v. Kessler*, 932 S.W.2d 732 (Tex.App.–Fort Worth 1996, writ denied). We also agree with Allstate's contention that the facts giving rise to the Duddings' claims for property damage other than from exposure to mold were Hicks' alleged representations during the sale, and not the

as such, is unusable by Plaintiffs." In its context, we read that sentence to allege loss of use of the personal property in conjunction with loss of use of the residence, and, therefore, at a time well after Hicks' policy period.

15

failure of the sewer pipe or other defects in the residence. *See Freedman,* 976 S.W.2d at 778.

## Conclusion

Concluding that the Duddings did not allege a cause of action against Hicks for bodily injury or property damage caused by an occurrence, and thus potentially covered by the Allstate policy, we sustain Allstate's first issue.

## Issue Two

Allstate's second issue asserts that the trial court erred in denying summary judgment for it. We sustain that issue as well. We recognize that our reversal of summary judgment for Hicks does not establish Allstate's entitlement to summary judgment. *G.H. Bass & Co. v. Dalsan Properties-Abilene*, 885 S.W.2d 572, 575 (Tex.App.–Dallas 1994, no writ). Our review of the record, though, satisfies us that there is no genuine issue as to any material fact and that Allstate is entitled to judgment as a matter of law on the issue of its duty to defend Hicks against the Duddings' claims against him. Tex. R. Civ. Proc. 166a(c). For the reasons outlined in our discussion of Allstate's first issue, we conclude that the Duddings' factual allegations, fairly construed, did not state a cause of action potentially covered by Hicks' homeowners policy. *National Union*, 939 S.W.2d at 141.

16

Conclusion

Having sustained both of Allstate's issues, we reverse the judgment of the trial court and render judgment declaring Allstate has no duty to defend Hicks against the claims made by the Duddings and that Hicks take nothing. Tex. R. App. Proc. 43.2(c); 43.3.


James T. Campbell
Justice

NO. 07-02-0399-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 10, 2003

_____

ALLSTATE INSURANCE COMPANY, APPELLANT

V.

ALVIN F. HICKS, APPELLEE

_____

FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;

NO. 51,836-C; HONORABLE PATRICK PIRTLE, JUDGE

_____

Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

**CONCURRING OPINION**

I agree with the dissenting opinion's discussion of principles on which a motion for summary judgment must be founded. I concur in rendering judgment for Allstate, however, because I conclude that Allstate's motion presented the issue on which we grant judgment in favor of Allstate; albeit without a great amount of emphasis. And, the issue has been addressed by Hicks without complaint that it was not encompassed within Allstate's motion.

Phil Johnson
Chief Justice

NO. 07-02-0399-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 10, 2003

_____

ALLSTATE INSURANCE COMPANY, APPELLANT

V.

ALVIN F. HICKS, APPELLEE

_____

FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;

NO. 51,836-C; HONORABLE PATRICK PIRTLE, JUDGE

_____

Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

**Dissenting Opinion**

Though I concur with the majority that the summary judgment awarded Alvin F. Hicks (Hicks) should be reversed, I disagree with the majority's decision to render summary judgment in favor of Allstate Insurance Co. (Allstate).

The majority believes that summary judgment should be granted to Allstate because Michael and Lynnette Dudding (the Duddings) failed to plead a cause of action within the ambit of Allstate's policy. That contention may be a viable basis for relief. Yet, first it must be encompassed within a motion for summary judgment filed by Allstate.

It is well-settled that motions for summary judgment must stand or fall on the grounds expressly presented therein. *McConnell v. Southside Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). Consequently, both trial and appellate courts are barred from granting or affirming summary judgments on grounds that no one mentions. *Keifer v. Spring Shadows Glen*, 934 S.W.2d 785, 787 (Tex. App.–Houston [1st Dist.] 1996, writ denied); *Sanders v. Capitol Area Council*, 930 S.W.2d 905, 910 (Tex. App.–Austin 1996, no writ). This is equally true when the parties tender cross-motions for summary judgment for in that situation each movant must still carry its own burden to prove its right to judgment, *Russell v. Panhandle Producing Co.*, 975 S.W.2d 702, 708 (Tex. App.–Amarillo 1998, no pet.), and neither party may be granted judgment simply because its opponent fails to carry its burden. *Miller & Freeman Ford, Inc. v. Greater Houston Bank*, 544 S.W.2d 925, 926 (Tex. 1976), *quoting*, *Tigner v. First Nat'l Bank*, 264 S.W.2d 85 (Tex. 1954); *Russell v. Panhandle Producing Co.*, 975 S.W.2d at 708.

Here, the insurer contended, via its motion, that it was entitled to relief solely on the ground that "the damages alleged by the Duddings were not caused by an accident because Hick's misrepresentations . . . were the origin of all their damages, and the policy's intentional injury exclusion precluded coverage." In other words, Allstate believed itself entitled to judgment because the damages purportedly suffered by the Duddings arose from intentional conduct, which conduct was not covered by the Allstate policy. Nothing was said about being entitled to relief because the Duddings' failed to state a cause of action within their live pleading. So, Allstate cannot be awarded summary judgment for the reason relied on by the majority. *McConnell v. Southside Sch. Dist.*, *supra*; *Keifer v. Spring Shadows Glen*, *supra*; *Sanders v. Capitol Area Council*, *supra*. To

21

hold otherwise would be to award judgment to Allstate merely because Hicks failed to carry his burden on appeal; that I can not do. *Miller & Freeman Ford, Inc.*, *supra*; *Russell v. Panhandle Producing Co.*, *supra*. Accordingly, I dissent from the majority's decision to render summary judgment for Allstate.[7]

Brian Quinn<br>
Justice

---

[7]I understand that reversal and remand may do nothing more than expose the litigants to further delay and cost. Nonetheless, our courts have demanded strict compliance with the provisions of Rule 166a of the Texas Rules of Civil Procedure. *See In re Estate of Thompson*, 873 S.W.2d 113, 114 (Tex. App.–Tyler 1994, no writ) (stating that "because of the severe results, the rule 'must be applied as written'"); *Bell Showa Denko K.K.*, 899 S.W.2d 749, 759 (Tex. App.–Amarillo 1995, writ denied) (stating that the summary judgment rules must be strictly construed since it is a harsh remedy).