## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-20619
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

August 15, 2014

COLLECTIVE ASSET PARTNERS, L.L.C.,

Lyle W. Cayce
Clerk

Plaintiff - Appellant

v.

VTRADER PRO, L.L.C.; HERB KURLAN,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CV-203

Before DAVIS, BENAVIDES, and PRADO, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant appeals the district court's grant of summary judgment in this breach of contract action. Finding no error, we AFFIRM.

### I.    BACKGROUND

This suit stems from a contract to sell a Collateralized Mortgage Obligation ("CMO") that was owned by the Plaintiff-Appellant, Collective Asset Partners, L.L.C. ("Collective Asset"). A CMO is a mortgage-backed bond

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-20619

secured by payment from a pool of mortgages. CMOs are traded through the Depository Trust Company ("DTC"), which was created as a national system for clearance and settlement of transactions in securities. To transfer a security held by the DTC, the owner of the security must execute a "DTC Request Form."

Defendants-Appellees, VtraderPro, L.L.C. and its CEO, Herb Kurlan (collectively referred to as "VPRO"), sent a letter to Collective Asset's managing member, Ted Peters, asking to purchase a particular CMO for $400,000. The letter provided in pertinent part as follows:

> Dear Ted,
>
> This letter will serve as an agreement between Vtrader PRO, LLC (VPRO) and Collective Asset Partners for the purchase of JPMCC 2007 – LDP11 Cusip #US46631BAH87 with a face value of U.S. $500,000,000. The purchase price is $400,000 and this amount is to be paid to you within 10 business days from the date of transfer of the CMO's [t]o:

CITIBANK NY

DTC 908

Account 089154 CSC73464

Further Credit to:

Collective Asset Partners, LLC

Beneficiary Deposit Account NR. 840

BSI SPA San Marino

Subsequently, Collective Asset hired a broker to make the transfer, and the broker filled out a "DTC Request Form." The broker provided information about the DTC account and the San Marino bank account. However, the information was incomplete and thus the CMO was transferred to the DTC but failed to thereafter transfer to the San Marino bank account. VPRO refused to

2

pay for the CMO.  The CMO was returned to Collective Asset, and it sold the CMO to a different buyer for $175,069.41.

Collective Asset brought the instant lawsuit, alleging that VPRO breached the contract by failing to pay the agreed purchase price of $400,000 for the CMO.  After discovery was conducted, the parties filed cross motions for summary judgment.  The district court granted VPRO's motion and denied Collective Asset's motion.  The district court ruled that the terms of the contract required Collective Asset to transfer the CMO to the San Marino bank account.  Thus, it held that because the CMO never transferred to the San Marino bank account, VPRO had no duty to pay Collective Asset.  Further, the court stated that regardless of whether the "contract was bilateral or unilateral, the undisputed facts in the summary judgment record show that Collective Asset would not fulfill its contractual obligations until the CMO reached the San Marino bank account."   Collective Asset now appeals.

## II.    ANALYSIS

Collective Asset contends that the district court erred in granting VPRO summary judgment.  This Court reviews a grant of summary judgment de novo, applying the same standards as the district court.  *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 486 (5th Cir. 2004).  "A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."  *Id.*; *see also* FED. R. CIV. P. 56(a).

It is undisputed that Texas law applies.  Under Texas law, the elements of a breach of contract claim are: "1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract

by the defendant; and 4) damages to the plaintiff resulting from the breach." *Lewis v. Bank of Am. NA*, 343 F.3d 540, 545 (5th Cir. 2003).

Here, the parties contend, and we agree, that there was a valid contract in existence.  With respect to the second element, the district court held that Collective Asset failed to fully perform because the terms of the contract required the CMO to be transferred to the San Marino bank account.  Thus, VPRO's refusal to pay was not a breach of the agreement.  Collective Asset argues that the language of the agreement shows that VPRO promised to pay once the CMO was transferred to the DTC account.  Alternatively, Collective Asset argues that the language is ambiguous.

Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered into.  *In re El Paso Refinery, LP*, 302 F.3d 343, 353 (5th Cir. 2002); *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996).  If the contract terms are susceptible to only one reasonable construction, the contract is unambiguous and will be enforced as written.  *Guar. Nat. Ins. Co. v. Azrock Indus. Inc.*, 211 F.3d 239, 243 (5th Cir. 2000). "[A] contract is ambiguous only when the application of the applicable rules of interpretation to the instrument leave it genuinely uncertain which one of the two meanings is the proper meaning . . . ." *R & P Enter. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex. 1980). "The failure to include more express language of the parties' intent does not create an ambiguity when only one reasonable interpretation exists." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 591 (Tex. 1996).

The language of the contract provided that VPRO would pay $400,000 "within 10 business days from the date of the transfer of the CMO's" to the DTC account and "Further Credit to" the BSI SPA San Marino bank account. We do not find these terms to be ambiguous.  Moreover, the circumstances

surrounding the performance indicate that both transfers were required under the contract.[1]  The DTC request form filled out by Collective Asset's broker attempted to effectuate the transfer to the San Marino bank account. However, the broker apparently failed to sufficiently identify the San Marino account.

When interpreting a written contract, the primary concern of the Texas courts is to determine the true intentions of the parties as expressed in the instrument.  *R & P Enter.*, 596 S.W.2d at 518.  Accordingly, the court should "consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983) (emphasis in original).  Collective Asset's interpretation of the contract would not give effect to the term in the agreement providing that it would "further credit" the CMO to the San Marino account.  Under these circumstances, we conclude the only reasonable interpretation is that VPRO was not required to pay until the CMO was transferred to the San Marino bank account.  The district court properly granted summary judgment in favor of VPRO.[2]  Thus, the district court's judgment is AFFIRMED.

---

[1] Collective Asset points out that it had no control over the CMO once the CMO was transferred to the DTC account.  However, VPRO likewise did not have control over the CMO after the transfer to the DTC account.

[2] Further, we agree with the district court that regardless of whether the contract is a unilateral or a bilateral contract, summary judgment was properly granted for VPRO.